## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

JUDICIAL WATCH, INC.,

          Plaintiff,

       vs.

U.S. DEPARTMENT OF HOMELAND
SECURITY,

          Defendant.
_____/

Civil Action
No. 1:16-cv-00967-RDM

Washington, DC
May 1, 2017

2:01 p.m.


### TRANSCRIPT OF MOTION HEARING
### BEFORE THE HONORABLE RANDOLPH D. MOSS
### UNITED STATES DISTRICT COURT JUDGE


**APPEARANCES**

For the Plaintiff:      **James F. Peterson**
                      JUDICIAL WATCH, INC.
                      425 Third Street, SW, Suite 800
                      Washington, DC 20024


For the Defendant:      **James R. Powers**
                      U.S. DEPARTMENT OF JUSTICE
                      Civil Division
                      20 Massachusetts Avenue, NW
                      Washington, DC 20001

_____


Court Reporter:        **Jeff M. Hook, CSR, RPR**
                      Official Court Reporter
                      U.S. District & Bankruptcy Courts
                      333 Constitution Avenue, NW
                      Room 4700-C
                      Washington, DC  20001


**Proceedings recorded by realtime stenographic shorthand;
transcript produced by computer-aided transcription.**

1               **P R O C E E D I N G S**

2               **DEPUTY CLERK:**  Civil action 16-967, Judicial

3   Watch, Incorporated versus U.S. Department of Homeland

4   Security.  Will counsel please approach the podium and

5   identify yourselves for the record.

6               **MR. PETERSON:**  Good afternoon, your Honor.  James

7   Peterson for Plaintiff Judicial Watch.

8               **THE COURT:**  Good afternoon, Mr. Peterson.

9               **MR. POWERS:**  Good afternoon, your Honor.  Jim

10  Powers on behalf of the Department of Homeland Security.

11  With me at counsel table is Marcia Berman of the Department

12  of Justice.  And I'll just note for the record that former

13  counsel in this case Bailey Heaps has left the government

14  and I'll be taking over handling duties here.

15              **THE COURT:**  Okay.  Well, welcome to both of you.

16              **MR. POWERS:**  Thank you, sir.

17              **THE COURT:**  Mr. Powers, even though you're the new

18  one, this is your motion so why don't we start with you.

19              **MR. POWERS:**  Sure, your Honor, thank you.  And I

20  wanted to update the Court on some factual circumstances

21  which have developed in the last few days and I think will

22  bear substantially on your Honor's consideration of the

23  motion.  So in preparing for this hearing last week, we

24  learned on Thursday and Friday of last week that Secretary

25  Johnson's private e-mail account, that there had been some

1    developments there.  So just you to back up.

2           As you're aware, this case concerns the private

3    e-mail accounts of four former Department of Homeland

4    Security officials:  Secretary Jeh Johnson, Alejandro

5    Mayorkas, Steve Bunnell and Christian Marone.  At our last

6    hearing, the Government indicated in that that hearing

7    concerned federal records issues which although there's no

8    Federal Records Act claim in this case, has been somewhat

9    relevant or at least has been of interest in these

10   proceedings.

11          And the Government had indicated that Secretary

12   Johnson may have certain federal records on his private

13   e-mail account.  He conducted a review of his private e-mail

14   account for his time as secretary for purposes of the

15   Federal Records Act, and determined that he may have a

16   certain number of federal records on that account.  He

17   expects to make a production to DHS versus soon -- we would

18   expect within the next couple of weeks, of those e-mails.

19          And so I want to be clear that he didn't conduct

20   this review pursuant to the FOIA, pursuant to the request

21   that Judicial Watch made in this case.  He did so under the

22   definition of a federal record under the FRA.  But given

23   that that production will be occurring, we wanted to raise

24   that with the Court.

25          And I also wanted to note one more thing about

1    that which is that in our motion for summary judgment, we

2    indicated that -- in the declaration that Secretary Johnson

3    had 17,000 e-mails in his Gmail account.  As part of

4    learning about this review, we learned the number was a bit

5    higher than that in fact.  So I wanted to just clarify that,

6    I think that further shows the burdens in play and the

7    review that he undertook.

8         **THE COURT:**  And how many e-mails have you now

9    determined or has he determined that he had in that account?

10        **MR. POWERS:**  So for the period of the FOIA

11   request, 26,600 is the number that we understand, so a fair

12   bit higher.  And that really plays into the burdensomeness

13   arguments the Government has previously raised.  But what I

14   want to back up and say is that we informed Judicial Watch

15   of these facts on Friday, and the parties have now begun to

16   discuss whether or not there would be a way to -- given this

17   production that's incoming, to have kind of a global

18   resolution of these proceedings, you know, processing those

19   records in lieu of a response to the FOIA request.

20        We haven't yet come to any sort of agreement

21   definitively about that, but that component in addition to a

22   potential global agreement about all of the requests, we

23   think that it might make sense at this time to defer

24   consideration of the motion for summary judgment in light of

25   the potential negotiations the parties are undertaking.

1          **THE COURT:**  Well, my understanding is that

2    Government has not moved with respect to Mr. Marone's

3    account, correct?

4          **MR. POWERS:**  That's correct, your Honor.

5          **THE COURT:**  And it sounds to me as though what

6    you're saying here is that the Government is no longer in a

7    position in which it -- it doesn't sound like its argument

8    applies any longer with respect to Secretary Johnson's

9    account.  You may have some further motion you would want to

10   file down the road, there could be some further dispute

11   between the parties about whether everything was produced or

12   so forth.

13         But it seems as though he'll be in a similar

14   posture perhaps to -- you've indicated that you're going to

15   do a search with respect to the e-mails that are in the

16   Department's possession already that are the non .gov

17   records.

18         **MR. POWERS:**  Right.

19         **THE COURT:**  That universe is just going to

20   increase now because you're going to get them back from

21   Secretary Johnson.

22         **MR. POWERS:**  Well, I guess a couple of points on

23   that.  So one is that there is a search ongoing of .gov

24   e-mails mentioning the private e-mail accounts.  And our

25   production was made in January.  The process is ongoing to

1    search and process those and produce them to Judicial Watch.

2           Now, we would say that this development doesn't

3    necessarily moot our arguments with respect to Secretary

4    Johnson.  Because to be clear, his search was with respect

5    to the Federal Records Act.  And the definition of a federal

6    record we would contend is narrower than what Judicial Watch

7    is seeking in its FOIA request.  And so to the extent that

8    there are documents on the private e-mail server that would

9    be responsive to Judicial Watch's FOIA request, DHS will not

10   have them after this production is made.

11          **THE COURT:**  Boy, that seems like sort of a shame

12   perhaps from Secretary Johnson's perspective in that he

13   might have to do this twice then if he had to go through

14   26,000 e-mails.  If he went through them once to find the

15   federal records in there, to go through them a second time

16   and then to say if there's anything else that pertains to

17   government business that might not rise to the level of

18   being a federal record.

19          He's already done the work at this point of going

20   through the e-mails?

21          **MR. POWERS:**  Yes.  It's our understanding that he

22   undertook a search using search terms and a painstaking

23   manual review which took as we understand it many hours over

24   a period of weeks.

25          **THE COURT:**  Did he do a search for .gov records?

1     What was the search that he did?  I mean, I'm wondering

2     whether he really may have turned up everything that may be

3     subject to FOIA in any event.

4          **MR. POWERS:**  I don't think I have I guess full

5     information about the exact nature of the search other than

6     to say that it involved search terms, and from there kind of

7     narrowing the universe of e-mails.  And then undertook a

8     manual review of e-mail by e-mail after that, after applying

9     some set of search terms which I don't have at hand with me

10    right now.

11         **THE COURT:**  Well, this does raise an interesting

12    and different issue now as I'm thinking it through, because

13    under the Kissinger decision and the Competitive Enterprise

14    Institute decision, documents that are -- as well as other

15    decisions, documents that are federal records are -- in any

16    event, it's obvious that documents that are federal records

17    are property of the federal government.

18          If it's not a federal record but it's a document

19    that relates to government business in some respect, I guess

20    there's a question then about whether it is a document that

21    belongs to the federal government or belongs to Secretary

22    Johnson.  And if it's a document in which Secretary Johnson

23    has a claim of ownership, then it's not clear to me that

24    FOIA would apply to that set of documents.  I don't know the

25    answer to that question.  It raises that second level

1    question I suppose of records that are not federal records

2    and -- all federal records are property of the federal

3    government.  If it's not a federal record, what is its

4    status for purposes of FOIA if it's not in the possession of

5    the federal government.

6              I don't know the answer to that question.  I'm not

7    sure that the case law answers that question offhand at

8    least.

9              **MR. POWERS:**  And I don't think I have an answer to

10   that question for you today, your Honor, except to say that,

11   you know, the e-mails are being preserved pursuant to the

12   order that's been issued and the preservation notices that

13   were issued in this case.  We would contend that Judicial

14   Watch regardless of metaphysically if they would be entitled

15   to them in some set of circumstances, that they aren't

16   entitled to them in this case because the request is overly

17   broad and that it obligates a search which isn't reasonable.

18             **THE COURT:**  Well, let me ask you about the

19   argument that it's overly broad.  Actually, before we get to

20   that let me exhaust this first.  Where are we with respect

21   to Mr. Mayorkas' and Mr. Bunnell's efforts?

22             **MR. POWERS:**  So no similar search to the type that

23   Secretary Johnson undertook has occurred, because they've

24   both represented that their practice was to any time

25   official government business was conducted in any way or

1    came across the transom so to speak on their private e-mail

2    accounts, that they either copied a .gov e-mail address or

3    forwarded within the requisite time period in which case

4    they would be in compliance with the Federal Records Act and

5    any federal record would be captured on agency systems.  So

6    no Federal Records Act search is planned as I understand it

7    with respect to them.

8            And obviously with respect to the FOIA request,

9    it's been our position that no search is required at this

10   time pending the Court's determination of the motion for

11   summary judgment.

12           **THE COURT:**  Is there a way to just double check

13   that?  I have no doubt that if they have said that, that

14   they believe it to be true.  But it's possible that someone

15   thinks they're forwarding something to an address and they

16   just forget to do it.  Is there a way that they could just

17   do a double check by a sampling of some of the e-mails just

18   to make sure that they -- I mean, I suppose they can just do

19   it by looking in their e-mail and seeing if it's in the sent

20   e-mail or whether they're copied.  But some way to do a

21   check and actually make sure on some random basis that that

22   did happen?

23           **MR. POWERS:**  I have not consulted with them about

24   that question.  I guess, you know, I would just note that it

25   would certainly be our position that with respect to the FRA

1    and whether or not they would need to do something like that

2    to demonstrate their compliance with the FRA, that's not

3    something that's pending in this case.

4            **THE COURT:**  So let's turn to -- I mean, I

5    appreciate this background and this update, it's helpful,

6    but let's turn to the merits of the motion.  The way I'm

7    thinking about this is that there really are two discrete

8    questions.  One question is just whether the request

9    reasonably described the records sought.  And under case law

10   from the circuit, that requires an analysis of whether the

11   agency would be able to determine precisely what the records

12   are that are being sought.

13           The second question may be a question of

14   burdensomeness which I think is distinct, although I realize

15   in the case law sometimes the issues are conflated.  But

16   with respect to just the first inquiry, the reasonably

17   describe inquiry, I guess I don't see or at least I'm not

18   convinced at this point that the requests don't reasonably

19   describe the records that are sought.  I mean, I would think

20   that it might be a fair amount of work to do it, but that

21   one could in fact by going through the e-mails -- and

22   probably using search terms and not necessarily looking at

23   every single one of the e-mails, but by doing searches you

24   could figure out whether in fact Secretary Johnson was using

25   a non .gov e-mail address for the purposes of conducting

1    official business.

2           **MR. POWERS:**  Well, I think the issue there is that

3    sort of you've put a reasonable gloss so to speak on the

4    request.  And I think that our position would be that the

5    case law indicates that in those situations when the request

6    doesn't sufficiently describe the documents sought, that the

7    onus of the non production is on the requester who has

8    failed to sufficiently describe the records they're seeking

9    as opposed to the agency.

10          **THE COURT:**  But where is the ambiguity?  I mean, I

11   would think that if the secretary of a department is sending

12   an e-mail regarding, concerning or relating to official

13   business, that that sounds like it is an e-mail in which

14   that official is conducting the business of the government.

15   I mean, if you have the head of an agency sending an e-mail

16   about the business of that agency -- I mean, I suppose it

17   could be an e-mail to Secretary Johnson's parents saying, "I

18   had really a wonderful time at work today, I love this job

19   so much."  I don't think though that anyone seriously thinks

20   that's what the plaintiff is seeking in this case.

21          I think it's pretty clear what they're seeking in

22   this case are documents about the conduct of official

23   business that was done using a non .gov e-mail account.

24          **MR. POWERS:**  I think that the issue is it's, one,

25   the use of this terminology regarding, relating to,

1    concerning which case law which we've cited in our brief

2    indicates is -- does not reasonably describe the subject

3    that you're seeking:  Regarding, concerning or relating to.

4    I mean, some of these cases concern a person's name for

5    example; that documents regarding or concerning a person's

6    name, those documents are not reasonably described.  And so

7    it's not --

8              **THE COURT:**  I'm sorry, explain to me what you mean

9    by that.  I'm not sure I understand.

10             **MR. POWERS:**  So I'm just kind of invoking for

11   example the Jane Fonda case which we cited in our papers and

12   the Dale case from Judge Bates.  Both of those are instances

13   where the requests sought documents regarding, concerning or

14   relating to terms like that, the requester's name or an

15   individual's name.  And the Court concluded that those kinds

16   of situations are problematic because use of the term --

17   anything can relate to anything or it's unclear.

18             **THE COURT:**  I would venture to bet that half of

19   the FOIA requests filed in this country today use the word

20   relating in them.  That may be an exaggeration, but it's a

21   very large percentage of them.

22             **MR. POWERS:**  Right.  I guess I take your Honor's

23   point, but I think that the -- in some instances, it's

24   certainly worth pressing the point.  The case law indicates

25   that that is a -- that is not a sufficient level of

1    description for purposes of the FOIA.

2              **THE COURT:**  You've indicated that with respect to

3    Mr. Marone's e-mails, that the Government is actually doing

4    the search and doing a production.  So you must understand

5    what the production is seeking if you're doing it as to

6    Mr. Marone's e-mails.

7              **MR. POWERS:**  So just to be clear, with Mr. Marone,

8    he has conducted the search.  He has reviewed and determined

9    that he has no federal or agency records on his e-mail

10   account.  And so with respect to him, I would say just the

11   difference is that the Government can sort of put its gloss

12   and try to discern what the requester's intent is and then

13   ultimately attempt to have adjudicated the reasonableness of

14   that search.  But at the front end, at the outset, the

15   Government isn't required to do that sort of thing if the

16   documents aren't reasonably described.

17             **THE COURT:**  Well, let me put it a little bit

18   differently or frame it differently.  You've also indicated

19   that you're doing a search within the e-mail archives that

20   are maintained by the agencies of for example Secretary

21   Johnson's e-mail archive, and you're doing a search for that

22   and producing records out of that account where the e-mail

23   shows that Secretary Johnson used a non .gov e-mail account.

24             So you must you in doing that search be able to

25   have some sense of what the request means, because otherwise

1    you couldn't do that search.

2            **MR. POWERS:**  I believe the search is being

3    undertaken of the agency systems is of mentions of where

4    basically the personal e-mail account is a sender or

5    recipient or a copy-ee.  And so I think in part that's being

6    done in parallel with this.  I think once again it's kind of

7    an interpretation or an attempt to bring in documents that

8    would likely be responsive.

9            **THE COURT:**  Is this a point at which the plaintiff

10   could add any additional clarity or is it the Government's

11   position that they'd have to start all over again and serve

12   a new request?  For example, if Mr. Peterson were to stand

13   up now and say to me, "You know, Judge, you got it right,

14   what we're seeking is e-mails that relate to the conduct of

15   government business," could you accept that as a friendly

16   amendment to the request and operate based on that or would

17   you say no, the case still has to be thrown out and they

18   just have to then serve a new FOIA request that says that

19   and we start all over again -- but it's essentially just a

20   waste of time to do that because we'll end up back in the

21   same spot again?

22           **MR. POWERS:**  I mean, I guess I would say first

23   that it's our position today that potentially we can defer

24   questions like that because of these recent developments and

25   because of discussions ongoing between the parties that

1   would allow us to kind of resolve all this without the

2   Court's intervention.  Now, as far as the next step, I think

3   I'd just have to know more about what sort of amendment we

4   would be talking about and what functional effect that would

5   have on these proceedings.

6          **THE COURT:**  Okay.  And then do you have any sense

7   of the 26,000 e-mails -- or 26,600 e-mails that Secretary

8   Johnson reviewed, how many of those he's going to turn over

9   as federal records?  I'm curious as to what his hit rate

10  was.

11         **MR. POWERS:**  We don't have any information about

12  the number of e-mails that are going to be produced.  I

13  mean, it will be -- it will occur very soon.  It will be

14  done and then the agency will receive them and we'll be

15  moving forward from there.  But I don't have any information

16  right now about how many will be produced.

17         **THE COURT:**  And how much time would you like for

18  the parties to be able to work this out if you're asking

19  that the Court hold the motion in abeyance?

20         **MR. POWERS:**   I think that it might be appropriate,

21  say, a month or so for the parties to discuss further and

22  DHS to take receipt of these e-mails.  I think we'll have

23  some more information over the next month that maybe will

24  give us a little more opportunity to discuss these issues.

25  They just learned of it Friday, we just learned of it the

1    day before that and so we're still kind of operating with

2    some chained circumstances.

3             THE COURT:   Okay.  And are you raising a separate

4    burdensomeness argument at this point or at this point is

5    the argument really just one of lack of clarity with respect

6    to what the request is?

7             MR. POWERS:   No, I think the burdensomeness

8    argument still applies.  I think they kind of go together

9    and they kind of meld within the case law as well.  I think

10   the landmark legal case from Judge Chutkan really

11   demonstrates how they're kind of coextensive.  Part of the

12   issue is that because of the nature of the requests and

13   their breadth and the fact that they do not lend themselves

14   in any way to search terms for example, a kind of

15   painstaking manual review is sort of required.  We have sort

16   of an object lesson in that for a separate situation, the

17   burdensome review that Secretary Johnson undertook with

18   respect to the Federal Records Act.

19            THE COURT:   Although my recollection is that he

20   had more e-mails in his account than the others did in

21   theirs.

22            MR. POWERS:   That's correct.

23            THE COURT:   And so the others would be less

24   burdensome than whatever it was that he had to go through.

25            I guess I'm a little bit puzzled as to why it's

1   quite so burdensome just given search functions and

2   organizing functions.  I know for example that when I left

3   private practice, I had to go through and organize hundreds

4   of thousands of e-mails.  One thing you do in that

5   circumstance you is put them in alphabetical order.  The

6   first 120 e-mails were all from the Washington Post with

7   updates on news alerts.  Okay, you don't need to look at

8   those.  The next 200 may be e-mails from the secretary's

9   spouse, you don't have to look at those.  There are ways to

10  do it.  And then you can do a search for e-mails to .gov

11  addresses on the theory that well, if it's about conducting

12  government business, if it's to a government e-mail address,

13  there's at least a chance that that is about government

14  business.  It might not be.  It might be an e-mail to a

15  friend in an agency saying, "Hey, let's grab lunch."  But

16  that at least narrows the universe.

17          So there are things that could be done I would

18  think that narrow the burden fairly substantially in the

19  process.

20          **MR. POWERS:**  I think that our argument, we really

21  looked to for example the fact that because of the nature of

22  what is it to relate to official United States Government

23  business, e-mails like that could not mention the United

24  States or the Government or the Department of Homeland

25  Security in which case ultimately as Judge Chutkan indicated

1    in the landmark case, the official is to the point of just

2    reviewing each e-mail to determine whether or not it might

3    relate or concern official government business.

4         **THE COURT:**  My recollection of Judge Chutkan's

5    case is that the requests were far broader and far vaguer

6    than the requests at issue here.

7         **MR. POWERS:**  I think that the case is

8    distinguishable factually insofar as there were more

9    officials involved and more platforms, more kind of buckets

10   of information like social media accounts and different

11   types of e-mail accounts.  It's our position that it was not

12   broader -- or not vaguer and broader in the sense of the

13   actual request itself.  That request I believe sought

14   documents evincing the conduct of Department of Justice

15   business.

16        As far as the request itself goes, it's our

17   position that it's very, very similar to the one in play

18   here.  I think her basic reasoning with respect to any

19   individual account about having to undertake that kind of

20   painstaking review fully applies here.

21        **THE COURT:**  This is the point in which I think the

22   question of reasonably describing and burdensomeness often

23   get conflated.  Because reasonably describe I would think in

24   this context could be resolved by just some reasonable

25   search terms.  And if you understand what's being sought

1    here are e-mails that reflect the conduct of agency business

2    where people were using individual or private e-mail for the

3    purposes of conducting government business, you'd know what

4    that means.

5         It may be a lot of work to try and figure out

6    which ones fall in that camp or not.  But that's not the

7    same thing as saying you don't understand what the request

8    is.  Evincing may be a little bit in between the two which

9    perhaps explains Judge Chutkan's decision where you have to

10   look at it and you have to say well, I actually have to

11   decide here whether this actually constitutes evidence that

12   they had private e-mail accounts.  It might be an e-mail

13   from secretary X to secretary X's spouse saying, "Oh, let me

14   use my other e-mail account to send you something."  And

15   then someone has to say to them self well, now we know that

16   this person has another e-mail account and does that

17   constitute evidence.  The person is then put in this posture

18   of trying to make those types of judgments.

19        It may be your argument that the words regarding,

20   concerning or relating to raise the same issues.  But that's

21   different from saying you've got to look at a lot of e-mails

22   which people do all the time in responding to FOIA requests.

23        MR. POWERS:  With respect to the distinction

24   between evincing and regarding or relating, I think you're

25   correct, your Honor, that our position would be that the

1    same sorts of difficulties are presented.  As far as the

2    issue of search terms, I'll note that many months ago the

3    Government had raised the idea of crafting search terms to

4    narrow this issue, and we had been unable to reach an

5    agreement about that.

6            **THE COURT:**  And I'll ask Mr. Peterson about that.

7    I don't quite understand why it's not possible to come up

8    with some search terms, because all the FOIA requests are

9    reasonable efforts.  And it doesn't require in any case that

10   someone put eyes on every single document where there might

11   be a one-in-a-million chance that that document is

12   responsive in some way.  That's not what FOIA requests

13   require.

14           So I'll need to be convinced that it's not

15   possible to come up with search terms.  Although it is,

16   particularly with respect to the burdensome issue, the

17   Government's burden.  At this point in time, the Government

18   hasn't done much other than to say well, we conferred with

19   the individuals and they said they can't do this without a

20   whole lot of work.  If that's the point we got to with this

21   case, you might have to do more work to explain why search

22   terms -- you know, submit a declaration explaining why the

23   search terms were adequate and what the alternative would be

24   and the number of hours that would be involved and all the

25   sort of greater detail that's typically required on that

1    issue.

2            **MR. POWERS:**  Right.  And along the line of search

3    terms and other kinds of issues of trying to do what is

4    reasonable, you know, DHS is conducting a search and

5    processing the .gov accounts.  It appears that we have an

6    opportunity here to maybe come to some compromises at this

7    point given recent developments with respect to Secretary

8    Johnson.

9            **THE COURT:**  Okay.  Was there anything more that

10   you wanted to add?

11           **MR. POWERS:**  No, if you have no further questions,

12   your Honor.

13           **THE COURT:**  I'll give you an opportunity for

14   rebuttal, but that's helpful, thank you.

15           **MR. POWERS:**  I appreciate it, thank you.

16           **THE COURT:**  Mr. Peterson.

17           **MR. PETERSON:**  Good afternoon, your Honor.

18           **THE COURT:**  So from your perspective, where do we

19   stand?

20           **MR. PETERSON:**  Well, from our perspective, we're

21   pleased that after many months of representing to this Court

22   and to us that the agency did not understand our request and

23   that it was too burdensome for a search to be done, we find

24   out that both of those are practically not correct.  They

25   obviously understand the search as your Honor pointed out,

1   their own conduct indicates that.  They've talked to each of

2   the individuals, presumably explained to some degree what's

3   encapsulated in a search.  There hasn't been any difficulty

4   with that.

5          THE COURT:  My impression is that none of the

6   individuals have done searches for agency records.

7   Secretary Johnson has done searches for federal records.  It

8   may be your position is that you're not asserting a

9   distinction here for present purposes in which case that

10  might advance the ball.  But if your position is that no,

11  you're seeking all agency records even if they don't rise to

12  the level of being federal records, then that is a

13  distinction.

14         MR. PETERSON:  Well, it's not a distinction in

15  terms of understanding the request.  I mean, the --

16         THE COURT:  Sure, it is.

17         MR. PETERSON:  -- first point.  I mean, they

18  clearly understood what we're seeking.  Now, they may be --

19         THE COURT:  Well, I'm not sure that's true.  I

20  mean, take the example of the e-mail that Secretary Johnson

21  sends to a friend of his who's writing a book about the

22  Obama years and issues relating to domestic security.  And

23  he sends an e-mail to his friend who's writing this book

24  saying, "I'd be happy to meet with you at some time in the

25  future to chat about my experiences," that's not a federal

1    record.

2          Is that something you're seeking?  I mean, it does

3    relate to the conduct of agency business arguably.

4          **MR. PETERSON:**  We're seeking what we're entitled

5    to under the law.

6          **THE COURT:**  Well, but the question is is there an

7    ambiguity, an inherent ambiguity in what you're requesting.

8    And the words regarding, concerning or relating to are what

9    lawyers use in discovery requests when they're protecting

10   themselves by seeking everything they can possibly seek so

11   that no one can ever say they weren't seeking something.

12   And you say, "Of course this relates to that.  If you look

13   here and here and here, there are 17 different connections,

14   it relates, yeah.  And, you know, it was an outrage you

15   didn't produce that to me."

16          If on the other hand you want to say to me, "No,

17   Judge, you're right when you said this is about the conduct

18   of official government business," that's different and

19   that's a clarification.  But I need to know which it is

20   you're seeking.

21          **MR. PETERSON:**  Well, we're seeking agency records,

22   this is a FOIA case.

23          **THE COURT:**  I know, but what agency records?

24          **MR. PETERSON:**  We're seeking all official -- all

25   agency records reflecting official business during the

1   timeframe.  I mean, they understand this.  They've conducted

2   the search.

3        THE COURT:  So it is about the conduct of official

4   government business that you're seeking?

5        MR. PETERSON:  We will rely on the language of the

6   request.

7        THE COURT:  Well, then you may lose.  I mean, I

8   need clarification from you about this.  I mean, if I don't

9   understand what you're seeking and you're not able to

10  articulate to me here what you're seeking other than to say,

11  "Judge, it's the language we're seeking here and that's it,"

12  I don't see how you can prevail on this issue.  I mean,

13  you've got to tell me what it means.  You can't simply say,

14  "Judge, I'm seeking relating."  Fine, what does relating

15  mean?  Is 7 degrees of separation, is it relating to at that

16  point?

17       MR. PETERSON:  With respect, your Honor, it's not

18  unclear to the agency what we're seeking.

19       THE COURT:  Why is that?  I'm not sure I see the

20  evidence of that.

21       MR. PETERSON:  Well, the evidence is in their own

22  conduct.  They tasked the agency itself with searching for

23  records responsive to our request, understanding our request

24  from their official accounts.  They had no trouble doing

25  that.  They've said -- they presumably gave some

1    instructions to Mr. Marone saying what we were seeking.

2            **THE COURT:**  But if it's something that is residing

3    on a server in the agency, that presumptively is an agency

4    record at that point in time, right?

5            **MR. PETERSON:**  I believe so.

6            **THE COURT:**  So how do we know what constitutes an

7    agency record and what is on someone's private e-mail server

8    if it's simply relating to official government business?

9    And take my example, what is your answer to my example if

10   Secretary Johnson using his private e-mail sends an e-mail

11   to a friend of his who's writing a book about the Obama

12   years at the Department of Homeland Security and saying,

13   "I'm not prepared to talk to you about this now, but after I

14   leave I'm happy to sit down and have a cup of coffee with

15   you," covered or not?

16           **MR. PETERSON:**  Well, without agreeing that that

17   somehow binds us in this context, I would suspect that's

18   outside of what an agency record would be.  I mean, but

19   we're getting past the point that they have to do a search

20   for agency records.

21           **THE COURT:**  If you can't articulate to me what it

22   is they -- I mean, let's say you are agency counsel here and

23   you're getting on the telephone with Secretary Johnson.

24   What are you telling him to look for?  I mean, other than

25   simply giving him sort of not particularly helpful guidance

1   of saying, "Look at the request and provide everything

2   here."  He says, "I understand that, but I don't want to get

3   in trouble, I want to make sure I'm doing what I'm supposed

4   to do.  What is in particular that I'm supposed to look

5   for?"

6           **MR. PETERSON:**  Clearly he was able to do it.

7           **THE COURT:**  Well, no, no, no.

8           **MR. PETERSON:**  He's done it.

9           **THE COURT:**  He looked for federal records.

10  Federal records have a different definition than agency

11  records.  Federal records are records that actually do

12  reflect the actual conduct -- and I don't have the

13  definition in front of me, but the conduct of government

14  business.  They reflect decisions that are being made by an

15  agency for example.

16          That's different from something that relates to

17  official government business where it could be an e-mail to

18  a friend saying, "I'm incredibly frustrated because I can't

19  get anything done here.  I keep trying to convince people we

20  ought to do X and no one will listen to me."

21          **MR. PETERSON:**  We're not interested in his e-mails

22  to his friends, I'll be happy to narrow it to that.  But

23  we're interested in --

24          **THE COURT:**  So does that mean that e-mails to .gov

25  accounts are sufficient and that would capture the universe?

1                **MR. PETERSON:**  Not necessarily.  If Jeh Johnson is

2        doing business with Mr. Bunnell both through private e-mail

3        accounts, that's not necessarily going to pick it up.

4                **THE COURT:**  Fair enough.  So if they do a search

5        for .gov e-mail accounts as well as e-mails to the other

6        individuals who are parties to this lawsuit, would that

7        capture what you're looking for?

8                **MR. PETERSON:**  I think it would go a substantial

9        way to narrowing the universe which is what your Honor has

10       suggested.  If that kind of search was done, there probably

11       would not be much left that would require any individual

12       review.  I'm not going to --

13               **THE COURT:**  But not much else doesn't tell you --

14       I mean, I still need to know what they need to do here.  I

15       think they fairly need to know what they need to do here.

16       They need to respond to the request, but they need to

17       understand what it is you want them to do and what you think

18       is sort of a fair search.  And it's not enough to say

19       they'll get 98 percent of it if they do that, you say but

20       they still have to produce the additional 2 percent and I

21       can't tell them how to find that or what to look at.

22       They've got to look at all 26,000 of those e-mails and make

23       some judgment call about what I actually think the word

24       relating to means in this context which does feel pretty

25       burdensome at that point.  It looks more like landmark if

1    that's what you're asking them to do.

2            If you're saying instead it's e-mails to or from

3    .gov accounts to look at as well as to the four individuals

4    who are involved in this case -- I mean, and if you have

5    something else to suggest to me, I'm certainly open to it as

6    well.  But I think it's fair if you can't sort of articulate

7    what they need to do to look for it, then there's a problem

8    here.  So I just need help from you about what they should

9    look for.

10           **MR. PETERSON:**  Again, with respect, I think it's

11   quite clear what the definition in this circuit of what an

12   agency record is.  I don't think they're unclear about that,

13   and I don't think there's any reason to think that they

14   can't understand that.

15           **THE COURT:**  So give me the definition of an agency

16   record.

17           **MR. PETERSON:**  I mean, the circuit's been quite

18   clear as to what an agency record is.

19           **THE COURT:**  What is it?

20           **MR. PETERSON:**  I mean, I don't have the exact

21   language in front of me nor do I want to be bound by that.

22   But they're not suggesting and surely the agency is not

23   going to suggest that it is unclear what an agency record is

24   and doesn't know how to identify it.

25           **THE COURT:**  Give me a second, let me see if I can

1    find it.

2            So I'm looking here at the Justice Department's

3    OIP page which says, "What is an agency record?"  And then

4    they say, "A government employee's personal notes are not

5    agency records unless," dot dot dot.  "A record generated by

6    the Legislative or Judicial Branch is not an agency recorded

7    provided," dot dot dot.  "Records generated by federal

8    grantees are not agency records unless," dot dot dot.

9    "These examples illustrate the uncertainties and

10   complexities of determining whether material requested under

11   FOIA are agency records for purposes of the statute.  The

12   reason this issue is important is that FOIA only empowers

13   Federal District Courts to enjoin agencies from withholding

14   agency records.  As a starting point, the phrase agency

15   record may be said to include most records in the possession

16   of an agency."

17           These aren't in the possession of an agency.  So

18   the only guidance that I'm getting now in the first couple

19   of paragraphs from OIP are that if it was in the possession

20   of an agency, it might be an agency record.  I'm not sure

21   that it's quite as clear cut as you would suggest.  I've

22   certainly had cases in front of me where there's been

23   substantial litigation over what constitutes an agency

24   record or not.

25           **MR. PETERSON:**  Sure, sure, absolutely.

1  **THE COURT:**  Records are not statutorily defined in

2  the FOIA.

3  **MR. PETERSON:**  With respect, your Honor, I don't

4  think they've argued they don't understand what an agency

5  record is.  I mean, so --

6  **THE COURT:**  Well, your request though isn't

7  actually -- your request isn't saying we're seeking all

8  agency records that were embodied in e-mails to or from non

9  .gov e-mail accounts of these four individuals.  Your

10  request is any and all e-mails regarding, concerning or

11  relating to the official U.S. government business sent to or

12  from a non .gov e-mail account of those individuals.

13  So you're actually sort of the one who's refining

14  it a little bit saying of course but obviously we can only

15  request agency records and therefore it must be narrowed and

16  understood in that fashion.  But just looking at the request

17  itself, it does have this ambiguity.

18  Look, all I'm doing is -- I mean, I don't mean to

19  be putting you on the spot here.  What I really mean to be

20  saying is just tell us what you think they should search

21  for.  I don't think that's an unreasonable request.

22  **MR. PETERSON:**  It's not an unreasonable request.

23  But if I could back up, your Honor, we completely disagree

24  that these are not agency records because these officials

25  walked out the door with them.  I mean, we've been down that

1    road before.

2             THE COURT:  I'm not disagreeing with you about

3    that.  I was just reading what was on the OIP website.  And

4    OIP wasn't saying that either.  I think OIP was saying

5    that's a starting point.

6             MR. PETERSON:  Right.  So in this case then, what

7    we have is a request for all agency records relating to

8    official government business.  Now, if it would be helpful

9    to the agency -- and I don't think they've asked for this

10   before, if it would be helpful for the agency for us to try

11   to reach some sort of agreement as to what constitutes

12   official government business, sure, we can do that.  But

13   they haven't argued that.

14            They think that -- they think, their argument is

15   only on this concerning, regarding or relating, terms as

16   your Honor says lawyers are quite familiar with.

17            THE COURT:  Right, familiar with, but they fight

18   endlessly about and that people put into their discovery

19   requests.  I can tell you I would be shocked to see a

20   response to a discovery request in which the responding

21   party didn't object to the use of the words relating,

22   concerning or regarding on the grounds that those are vague

23   terms.  I suspect that 90 percent of lawyers when they

24   respond to discovery requests say those terms are vague and

25   uncertain.

1          **MR. PETERSON:**  Absolutely, but of course we're not

2     there because they don't have the records, they let the

3     records leave and they have yet to bring them back.  I mean,

4     we'd be happy to talk about whether a particular record is

5     responsive or not at that point, but the first thing to do

6     is get the records.

7          **THE COURT:**  Fair enough.  I'm trying to be

8     somewhat practical here -- and it may be that the parties

9     are in the process of doing this and I should just get out

10    of the way and let you sit down and talk about it and figure

11    it out yourselves and you can resolve it.  But I'm just

12    trying to be practical here.  I want you to get the records

13    you're entitled to and I want that to happen in an efficient

14    way.  It seems to me one efficient way for that to happen is

15    for you to say here's what we're looking for.

16          It does feel a little bit unfair for you to say,

17    "Anyone in the world understands what these words mean, but

18    I'm not going to give you any articulation of what they mean

19    because I don't want to be walking away from anything I

20    might be entitled to and therefore I'm not going to tell you

21    sort of specifically what I would search for under those

22    circumstances because the words are so clear."

23          I'm just asking you to help us -- you want to

24    conduct the search, help us do it.  What do you want them to

25    look for?

1          **MR. PETERSON:**  I think -- again, your Honor, I

2    don't think -- and it has not been articulated that it's

3    that difficult for somebody to identify what is a record

4    relating to official government business.  Now, if they have

5    a problem with that in regards to specific e-mails, sure, or

6    categories of e-mails, sure, we'd be happy to discuss that

7    and we can narrow that.  Of course we haven't gotten to that

8    point because they claimed erroneously that it was too

9    burdensome for Jeh Johnson to go through his e-mails.

10          So we have a shifting field here, and when we get

11   to that point we'd be happy to talk about that.

12          **THE COURT:**  I guess I'm not sure what you mean

13   when we get to that point.  I sort of feel like we're at

14   that point, maybe not with respect to Secretary Johnson.

15   Let me ask you this:  Are you satisfied with the fact that

16   they -- that Secretary Johnson has turned over what he

17   believes to be federal records?

18          I understand you're not bound by the judgment.

19   Maybe he concluded that some record was not a federal record

20   that you might some day think should have been a federal

21   record.  Are you satisfied if we're limiting this to federal

22   records or are you taking the larger universe?

23          **MR. PETERSON:**  It wasn't clear to me until today

24   based on our prior discussions that apparently this was such

25   a significant distinction in Secretary Johnson's mind.  I

1    don't know between agency records versus federal records,

2    that was not made clear to us.  If that is what was going on

3    and he was narrowing the universe in some way that's

4    significant, then that could be a problem.

5              If it was a general search and he wasn't excluding

6    significant bodies of e-mails, then we're going to have to

7    revisit that.  I'm just not at a point where I can say that

8    because we know nothing about how he conducted his search.

9              **THE COURT:**  I obviously don't know either.  That's

10   why I just think that it's -- I don't quite get why the

11   parties can't come up with some search terms that avoids all

12   of that back and forth and uncertainty and where it can't be

13   let's agree we're going to look for e-mails to and from .gov

14   accounts, and e-mails to or from the private accounts of the

15   four individuals involved here.  And if there's some other

16   category that you think they ought to be looking for, tell

17   me what that is.  And then pull that together and look at

18   that.  That presumably is going to be a fairly limited

19   universe.  And then people can work through that and figure

20   out whether those actually are agency records or not.

21             **MR. PETERSON:**  I mean, it's hard for us to define

22   universe.  It's not just personal -- just not private

23   account e-mails sent between the four.  There could be other

24   agency officials that he was doing this with, so it's hard

25   for us to know.  What's important here is -- and we tried to

1    articulate this, this isn't just the ordinary FOIA case

2    where we could identify by .gov or something else easily the

3    universe.  How we got here matters.  They gave -- the agency

4    gave a waiver to these officials to use their e-mail

5    accounts with no mechanism whatsoever to address this

6    situation.  And our request is exact --

7              **THE COURT:**  Well, my understanding is the waiver

8    was to allow them to access their private e-mail accounts.

9    It wasn't to conduct government business on the private

10   e-mail accounts, it was just to access those accounts.

11             **MR. PETERSON:**  Well, they have not -- that's a

12   distinction that they've made.

13             **THE COURT:**  But it's a pretty important

14   distinction.  I mean, I understand if you're sitting at your

15   desk -- you're the Secretary of Homeland Security, you are

16   at your desk 18 hours a day.  The pressure of the world is

17   on your shoulders.  I can understand why under those

18   circumstances the agency might say, "Yeah, if you want to

19   access your private e-mail" -- "ordinarily maybe we don't

20   want most government agency employees doing that, but if you

21   want to do that, yeah, that makes a lot of sense given the

22   burdens that are on you."

23             I mean, that strikes me as a very different thing

24   than saying, "You're authorized to conduct government

25   business using your private e-mail," although I don't

1    frankly think that that also -- I mean, maybe more recently

2    that would raise problems.  Historically I think the issue

3    would have been just complying with the Federal Records Act

4    which I take it that the department has indicated that at

5    least Mr. Mayorkas and Mr. Bunnell did by sending CCs to the

6    Government account which then maintained the federal records

7    in compliance with the Federal Records Act.

8            **MR. PETERSON:**  Right.  After more than a year of

9    litigation they never claimed this, and now later on now

10   these officials allegedly are claiming this.  But the more

11   important point here is that they chose to use this.  The

12   difficulties here are of their own creation.  That's why

13   this FOIA request is by its nature -- you know, tries to

14   capture the entire universe because we don't know what was

15   being used in these private e-mail accounts.  We don't know

16   what kinds of messages were being sent.

17           Only if we have the full universe and not

18   distinctions made between the types of people or subject

19   areas, we'll never know what the universe is.  And

20   importantly, what we've learned here is the universe is not

21   so large that it can't be searched.  We now know that.  This

22   is contrary to what they said before.  And at least to some

23   degree --

24           **THE COURT:**  I believe they said it would be unduly

25   burdensome, I don't think they said it was impossible.

1          **MR. PETERSON:**  Well, they refused to do it because

2     it was too burdensome, but now they have.  So that's the

3     critical point.  So what we have here is a FOIA request

4     somewhat unusual because of the unusual nature of allowing

5     government business apparently to be done through private

6     e-mail accounts.  I mean, that's what's -- and in order to

7     get at that and to fully understand it, we have to be able

8     to access the full universe.

9          I mean, there's no -- and to the extent that's

10    difficult, it's not because of something that we did or

11    didn't include in our request, it's because of the way they

12    set it up.

13         **THE COURT:**  Well, so come back to my question.

14    Are you willing to concede at least or to modify or

15    clarify -- perhaps it's clarifying, clarify your request

16    that when you say regarding, concerning or relating to

17    official United States Government business, that what you're

18    talking about is the actual conduct of the business of the

19    United States Government and that you're not talking about

20    other things that might relate to the conduct of that

21    business?

22         **MR. PETERSON:**  Yes, absolutely.

23         **THE COURT:**  Well, I think that's helpful.  So if

24    it's about the actual conduct of the business, that strikes

25    me as reasonably describing --

1          **MR. PETERSON:**  We're not interested in an e-mail

2     that says, "I have to go to a softball game before I go to

3     the office."  I mean, obviously that's not official

4     government business.

5          **THE COURT:**  So you're looking for the conduct of

6     business?

7          **MR. PETERSON:**  The conduct of business.

8          **THE COURT:**  Okay.

9          **MR. PETERSON:**  And again, we can -- those kinds of

10    distinctions are most easily handled when there's actually

11    e-mails to discuss and review.  But we're not at that point

12    yet.

13         **THE COURT:**  But one of the things that's a little

14    bit tricky here though is that given some of the privacy

15    interests, I'm not sure that it's the Government that can be

16    the one that goes through and searches the e-mails, it might

17    have to be the individuals.  So someone has to be able to be

18    in a position in which they can provide reasonable guidance

19    to these individuals so they can segregate out the personal

20    e-mail saying this is what we're looking for.

21         I do think you're right, if it's saying what we're

22    looking for is e-mails that constitute the conduct of

23    government business, that strikes me as something that

24    someone can understand when they're charged with going to

25    look in their e-mails to see what's there.

1    **MR. PETERSON:**  This point has come up, the

2    potential privacy concerns before.  And if I might, your

3    Honor, that point since we last were here, that point

4    actually has been addressed in the CEI case by Judge

5    Kessler.  In an opinion that she issued on March 13th, she

6    considered precisely this issue.  The Government had

7    asserted the same privacy interest.  It's docket number 38

8    in 14-765.  And it's on page 17, footnote three where Judge

9    Kessler just very quickly says, "The Government has argued

10   the privacy interests of government employees in their

11   personal e-mails justify the withholding."  And Judge

12   Kessler rejects this saying that, "The Court is not

13   persuaded by this argument, the Court feels otherwise it

14   would allow them to shield the documents."

15       **THE COURT:**  But the Government can't just like

16   show up at someone's house and say, "Give me your password

17   or else, and I'm going to go into your computer and start

18   searching."  I mean, you need the cooperation of these

19   individuals in the relevant process.

20       **MR. PETERSON:**  With respect, your Honor, that's

21   why we were here in December.  We were concerned about the

22   preservation order and why people were leaving.

23       **THE COURT:**  And I ordered -- well, no, no, I don't

24   think that's the right distinction.  They had them and they

25   were gone.  The same thing would have applied with respect

1  to an existing employee.  You can't show up at an existing

2  employee's house and say -- you know, show up with your swat

3  team and say, "Give us access to your computer."  Maybe if

4  you got a subpoena you might be able to, but you would need

5  some compulsion.  The agency lacks that power, they need

6  their cooperation.

7       **MR. PETERSON:**  Actually, I'm not sure the agency

8  does lack that power under the Federal Records Act.  They're

9  actually required to under the Federal Records Act initiate

10  an enforcement action through the Attorney General with

11  subpoena power to go get these records.  The fact that

12  they've been out there now all these months just kind of

13  compounds the problem.  But again --

14       **THE COURT:**  But even then though I don't think you

15  can -- and I might be wrong about this, but I'm not aware of

16  any authority that would say they have the subpoena power to

17  say give me all of your private and government e-mails so we

18  can go through it and search it.  They may have the power to

19  compel the production quite sensibly of government records,

20  I understand that.  Government records belong to the federal

21  government.  But I think you have to find some way to

22  balance the various interests here.  I mean, we may be

23  getting a little bit off point.

24       **MR. PETERSON:**  With respect to your Honor, again,

25  I think the CEI case at the appellate court and here

1    indicate that the agency can't be permitted to shield

2    records by dropping them into personal accounts, raising

3    exactly this kind of problem where it's now hard to sift

4    them out later on.  That's the point of what the -- and the

5    problem here is that's what they've done.  And to say that

6    oh well, it's going to be hard is not a FOIA requester's

7    fault.  It's their fault for setting it up this way and they

8    need to be held to account for that.

9            **THE COURT:**  Well, I think the way to hold them to

10   account for that, if I'm following all of this, is for them

11   to understand what it is that they have to ask these

12   officials.  My understanding is that all the officials have

13   been cooperative with them in this, and just so they can go

14   to these officials and say to these officials this is what

15   we need.  And we just need to be able to articulate for them

16   what that is.

17           I think that you've helped today by saying that

18   what they need to do is go to them and say what we're

19   looking for is records that constitute the conduct of

20   government business.  I do think that that reasonably

21   describes a universe of documents that a reasonable person

22   can understand and know what they're looking for.  So I

23   think that's helpful in that regard.

24           **MR. PETERSON:**  Very good, we agree.  Thank you.

25           **THE COURT:**  Okay, good.  What about timing, what

1    are your views about discussions between the parties, how

2    much time the Court, if any, should provide?

3             **MR. PETERSON:**   I think the Government suggested

4    the 30 days.  I mean, that's certainly workable for us.

5    We're flexible on that.

6             **THE COURT:**   Okay.  So should I just require that

7    the parties then file a status report in 30 days?

8             **MR. PETERSON:**   That would be fine with us.

9             **THE COURT:**   And then what I can do is if the

10   parties aren't able to work it out, I think I can issue an

11   opinion pretty quickly on this then.  It doesn't strike me

12   as terribly complicated.

13            The one question I have which maybe I'll come back

14   to Mr. Powers about is whether the Court can rely on

15   Mr. Peterson's clarification in that what they're seeking is

16   documents that constitute the conduct of government

17   business.

18            Mr. Peterson, I'll let you have a seat and I'll

19   ask Mr. Powers that question.

20            **MR. PETERSON:**   Thank you.

21            **MR. POWERS:**   Thank you, your Honor.  I just wanted

22   to I guess go directly to your question about the

23   clarification, and just also to more broadly speak again a

24   little bit about Secretary Johnson's actions recently.  So I

25   don't think I made this point clear before.  He did jump off

1   from the Federal Records Act definition of records -- which

2   just for your Honor's information because I'm not sure it's

3   ever been cited in the record is 44 U.S.C. section 3301.

4   And it's our understanding he applied kind of an overly

5   broad -- not necessarily overly broad, but a broad

6   definition of record using that as sort of the starting

7   point.

8            **THE COURT:**  And my recollection is that when

9   you're dealing with an agency head, that the vast majority

10  of the agency records they create do constitute federal

11  records.  It may be that when you're dealing with more lower

12  ranked officials that it doesn't.  But to the extent the

13  definition of federal records involves evidence that

14  reflects agency decision making and decision making process,

15  when you're dealing with the agency head, it tends to be

16  frequently the case that what they're generating does

17  constitute a federal record.

18            **MR. POWERS:**  I can't speak to that, your Honor,

19  but you are correct that broadly speaking about what the

20  definition of federal record encompasses in documents

21  demonstrating, portraying the conduct of government business

22  and the functions and organization of the government.

23            So as far as the issue of Judicial Watch's

24  clarification, I would raise that we have before attempted

25  to seek search terms and other sorts of narrowing of this

1    type.  So this is our -- kind of today here in this hearing

2    is the first time we've managed to find that kind of

3    narrowing actually happening.  As far as Secretary Johnson

4    goes, I think that he's undertaken this review pursuant to

5    the FRA.  We are certainly going to try to work with

6    Judicial Watch to see if that is sufficient in their view.

7         And as far as the other two officials, it's our

8    view that it wouldn't change anything about the Government's

9    conduct going forward based on their representations that

10   anything that's on their private e-mail accounts would be

11   captured on the .gov accounts.  Therefore, there wouldn't --

12   in any event, the Government wouldn't necessarily need to

13   undertake further searches in those private e-mail systems.

14        **THE COURT:**  I'm just looking at the definition

15   that you pointed me to, and assuming that Secretary Johnson

16   took a broad view of this, it does appear that it would

17   capture I think virtually everything if not everything that

18   was captured by Mr. Peterson's description of documents that

19   constitute the conduct of government business.

20        Because the definition, just for the record, says,

21   "The term records includes all recorded information made or

22   received by a federal agency under federal law or in

23   connection with a transaction of public business or

24   preserved or appropriate for preservation by that agency or

25   its legitimate successor as evidence of the organization,

1      functions, policies, decisions, procedures, operations or

2      other activities of the United States Government or because

3      of the informational value of the data in them."

4              So if you're the agency head, I would think that

5      most -- as I was saying before, I think most of the things

6      that you are doing that are reflected in documents are going

7      to evidence the organization, functions, policies,

8      decisions, procedures, operations or other activities of the

9      Government.

10             **MR. POWERS:**  That could well be.  And I certainly

11     appreciate your Honor's point, and obviously it's our hope

12     that we can come to an agreement that this is -- that this

13     search that's occurred and this production that will happen

14     will be enough to satisfy the request as far as Secretary

15     Johnson goes.

16             **THE COURT:**  Remind me how many e-mails

17     Mr. Mayorkas has in the relevant e-mail account.

18             **MR. POWERS:**  I believe it's 5,000 as I recall.  I

19     believe that's correct.

20             **THE COURT:**  And what about Mr. Bunnell?

21             **MR. POWERS:**  I need to check.  I have it my papers

22     here, just one moment, please.

23             **THE COURT:**  My recollection was it might have been

24     even less than that.

25             **MR. POWERS:**  I recall with respect to him that

1    actually it was 11,000 -- yes, so Mr. Bunnell had 11,000 for

2    the time period, Mr. Mayorkas 5,000 for the time period.

3         **THE COURT:**  So given the fact that Mr. Johnson was

4    able to do it in -- and I appreciate the fact that he went

5    to the effort, was able to review the 26,000 e-mails for

6    these purposes, it seems like Mr. Bunnell and Mr. Mayorkas

7    can go through the 5,000 and the 11,000 e-mails to look for

8    e-mails that actually constitute the conduct of government

9    business using reasonable search technology for purposes of

10   doing it.

11        I'm not in a position in which I can sort of

12   dictate exactly what that would be.  As I said before, I

13   think most of us have a fair amount of trash in our e-mail

14   accounts and you can just sort that and not have to look at

15   that.  And then you sort through that and then you sort

16   through the e-mails of family members and friends, and that

17   leaves you with the universe.  And then maybe you do

18   searches for .gov or searches for officials you dealt with

19   on a regular basis.  There ought to be a way I would think

20   without a huge amount of burden to sort through that and

21   find the agency records in that context.

22        And I should say that if it's something that's

23   duplicative of a record that the agency already has, I'm not

24   at all sure that that is an agency record.  Because I think

25   what's required is that the agency maintain a record of the

1    its business.  The fact that someone else may have a record

2    of that business doesn't render the duplicate necessarily an

3    agency record I believe, although I can be corrected on that

4    if that's not right.

5         **MR. POWERS:**  Just to be clear, to telegraph, it

6    would certainly be our position down the road that if they

7    had this practice as they've represented -- that they had

8    this practice of forwarding and copying and we were to

9    prepare evidence of that, that that would be sufficient for

10   purposes of a search under FOIA.  But obviously we're

11   jumping a couple steps beyond the threshold question of

12   whether or not the request is properly stated at all.

13        **THE COURT:**  Fair enough.  As you've probably

14   gathered -- and I'm not sure you've gotten around to

15   answering this question yet, but if the request is clarified

16   to say records that constitute the conduct of official

17   government business, in your view is that clear enough?

18        **MR. POWERS:**  I think our position would be

19   functionally it wouldn't -- given where we are now with the

20   various factual developments that have occurred, it wouldn't

21   change much functionally about what's going to happen going

22   forward.  I guess I would say also though that a request

23   like that doesn't lend itself again to search terms to kind

24   of -- to a way of separating out the wheat from the chaff so

25   to speak.

1          **THE COURT:**  It does somewhat, because as I said

2     you can exclude -- if their e-mail boxes look anything like

3     mine, you can exclude vast quantities of e-mail that is just

4     clearly not responsive, you know, e-mails from some news

5     service or advertisements for some products or whatever it

6     might be.  You don't have to look at all of that, you just

7     have to look at the more individualized ones.  Family

8     members, again you can exclude that, you don't have to look

9     at that.

10          For example, if you're starting with 5,000 e-mails

11     and it turned out that 20 percent of that was spam and

12     another 20 percent of it was e-mail from family members,

13     then the universe of what you actually have to look at is

14     pretty small at that point.

15          **MR. POWERS:**  I can certainly -- I can imagine that

16     there are ways of narrowing what it is, but I don't have a

17     sense of the composition of the e-mail inboxes.  I do think

18     there's still ultimately a potential that how the request

19     would be stated, that it wouldn't be something that is

20     construed as reasonably describing.

21          And I would just note the FRA is not incorporated

22     into FOIA, they're separate regimes imposing separate

23     obligations upon agencies and officials.

24          **THE COURT:**  Right, I think that's true.  I think

25     that probably what I said with respect to Secretary Johnson

1   is probably true as well for the other individuals here,

2   because they were all high ranking officials in the

3   department.  I suspect the vast majority of e-mail that

4   they've generated that constitutes the conduct of government

5   business would fall within the federal records definition as

6   well as the agency records definition.

7           And if they were producing to you -- they would be

8   wise I think to sort of cut it broad enough so they don't

9   have to do the work twice, but to look more broadly and see

10  anything that they have relating to the conduct of

11  government business.  I think it may be hard for an

12  individual to make a determination and say, "I've decided on

13  my own that this e-mail for example would be an agency

14  record because it is actually an official document that was

15  generated in the course of my official duties, but I don't

16  think it rises to the level defined in the Federal Records

17  Act because I don't think it meets that definition."

18          At the end of the day, that's going to be a

19  judgment call, and it's going to be hard for an individual

20  to make that without at least having some conversation with

21  the agency lawyers about whether they agree with that

22  assessment.

23          **MR. POWERS:**  It's certainly a matter of judgment

24  as I've seen in the guidances that are provided to the

25  Department of Justice attorneys about our own federal

1    records obligations.

2         **THE COURT:**  Exactly.

3         So what is your position for whether for purposes

4    of the pending motion I can accept the friendly

5    clarification from the plaintiffs as to what they're looking

6    for here?

7         **MR. POWERS:**  I think given that concession, I

8    think you can accept the change.

9         **THE COURT:**  Mr. Peterson might disagree that it's

10   a concession.

11        **MR. POWERS:**  Fair enough, I won't put that gloss

12   on it.  But that you can accept the change.  And our

13   position being that it remains overly broad, that there are

14   similar kinds of burdensomeness issues.  And that

15   functionally it doesn't change much about the nature of

16   what's going to be occurring over the next period of time.

17        **THE COURT:**  So let me do this:  I'll enter an

18   order requiring a status report within 30 days.  I hope the

19   parties can work the issues out, because I do think at the

20   end of the day this is a matter of mechanics more than great

21   legal issues involved.  It's really just a question of how

22   to accomplish what needs to be accomplished here.

23        Just by way of guidance to the parties, I will let

24   you know that as currently framed, I'm not entirely

25   persuaded by the Government's motion.  I might be further

1    convinced with a motion that had additional declarations

2    that set forth some burdens that are just not apparent to

3    the Court.  But as things currently stand with respect to

4    the issue of burden, all I really have to go on is a

5    declaration saying that someone has consulted with these

6    individuals and these individuals have said it will be very

7    difficult to do this.

8             It's apparent that Secretary Johnson was able to

9    do something, even though it may have been very burdensome

10   to him.  And the others, it would be even less burdensome.

11   So I don't think the record reflects as we currently stand

12   the burdensomeness.  It may be that if the parties sit down

13   and talk and they're not able to reach some agreement and

14   you come back to me and you say Judge, we want to file a new

15   motion at this point, that you would be able to submit some

16   declaration saying here's why this is particularly

17   difficulty in this case.  But I would need more to do that.

18             With the clarification, I'm at least not at

19   present convinced that the request doesn't reasonably

20   describe what's being sought.  It's my inclination at this

21   point -- and this is just an inclination, but in case it's

22   helpful to the parties, my inclination would probably be to

23   deny both the motion and the cross-motion on the present

24   record and provide an opportunity to file a further motion

25   if you needed to at that point in time.  But I'll hold off

1    in actually drafting and entering anything until I get your

2    report in a month.

3                    **MR. POWERS:**  Okay.  I appreciate that, your Honor.

4                    **THE COURT:**  Thank you.  Anything further from you,

5    Mr. Peterson?

6                    **MR. PETERSON:**  No, thank you, your Honor.

7                    **THE COURT:**  Okay, thank you.

8                    (Proceedings adjourned at 3:12 p.m.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## <u>C E R T I F I C A T E</u>

I, **Jeff M. Hook, CSR, RPR,** certify that the
foregoing is a correct transcript from the record of
proceedings in the above-entitled matter.


<u>  May 8, 2017  </u>              _____

**DATE**                    **Jeff M. Hook, CSR, RPR**

**.**

**.gov [18]**   5/16 5/23 6/25
9/2 10/25 11/23 13/23
17/10 21/5 26/24 27/5 28/3
30/9 30/12 34/13 35/2
44/11 46/18

**1**

**11,000 [3]**   46/1 46/1 46/7
**120 [1]**   17/6
**13th [1]**   39/5
**14-765 [1]**   39/8
**16-967 [1]**   2/2
**17 [2]**   23/13 39/8
**17,000 [1]**   4/3
**18 [1]**   35/16
**1:16-cv-00967-RDM [1]**   1/4

**2**

**2 percent [1]**   27/20
**20 [1]**   1/17
**20 percent [2]**   48/11 48/12
**200 [1]**   17/8
**20001 [2]**   1/18 1/23
**20024 [1]**   1/14
**2017 [1]**   1/5
**26,000 [4]**   6/14 15/7 27/22
46/5
**26,600 [2]**   4/11 15/7
**2:01 [1]**   1/6

**3**

**30 [3]**   42/4 42/7 50/18
**3301 [1]**   43/3
**333 [1]**   1/22
**38 [1]**   39/7
**3:12 p.m [1]**   52/8

**4**

**425 [1]**   1/14
**44 [1]**   43/3
**4700-C [1]**   1/22

**5**

**5,000 [4]**   45/18 46/2 46/7
48/10

**7**

**7 degrees [1]**   24/15
**765 [1]**   39/8

**8**

**800 [1]**   1/14

**9**

**90 percent [1]**   31/23
**967 [1]**   2/2
**98 percent [1]**   27/19

**A**

**abeyance [1]**   15/19
**able [15]**   10/11 13/24
15/18 24/9 26/6 37/7 38/17
40/4 41/15 42/10 46/4 46/5
51/8 51/13 51/15
**about [54]**
**above [1]**   53/5
**above-entitled [1]**   53/5
**absolutely [3]**   29/25 32/1
37/22

**accept [4]**   14/15 50/4 50/8
50/12
**access [5]**   35/8 35/10
35/19 37/8 40/3
**accomplish [1]**   50/22
**accomplished [1]**   50/22
**account [23]**   2/25 3/13
3/14 3/16 4/3 4/9 5/3 5/9
11/23 13/10 13/22 13/23
14/4 16/20 18/19 19/14
19/16 30/12 34/23 36/6
41/8 41/10 45/17
**accounts [25]**   3/3 5/24 9/2
18/10 18/11 19/12 21/5
24/24 26/25 27/3 27/5 28/3
30/9 34/14 34/14 35/5 35/8
35/10 35/10 36/15 37/6
41/2 44/10 44/11 46/14
**across [1]**   9/1
**Act [12]**   3/8 3/15 6/5 9/4
9/6 16/18 36/3 36/7 40/8
40/9 43/1 49/17
**action [3]**   1/3 2/2 40/10
**actions [1]**   42/24
**activities [2]**   45/2 45/8
**actual [4]**   18/13 26/12
37/18 37/24
**actually [20]**   8/19 9/21
13/3 19/10 19/11 26/11
27/23 30/7 30/13 34/20
38/10 39/4 40/7 40/9 44/3
46/1 46/8 48/13 49/14 52/1
**add [2]**   14/10 21/10
**addition [1]**   4/21
**additional [3]**   14/10 27/20
51/1
**address [5]**   9/2 9/15 10/25
17/12 35/5
**addressed [1]**   39/4
**addresses [1]**   17/11
**adequate [1]**   20/23
**adjourned [1]**   52/8
**adjudicated [1]**   13/13
**advance [1]**   22/10
**advertisements [1]**   48/5
**after [6]**   6/10 7/8 7/8
21/21 25/13 36/8
**afternoon [4]**   2/6 2/8 2/9
21/17
**again [12]**   14/6 14/11
14/19 14/21 26/10 33/1
38/9 40/13 40/24 42/23
47/23 48/8
**agencies [3]**   13/20 29/13
48/23
**agency [75]**
**ago [1]**   20/2
**agree [3]**   34/13 41/24
49/21
**agreeing [1]**   25/16
**agreement [6]**   4/20 4/22
20/5 31/11 45/12 51/13
**aided [1]**   1/25
**Alejandro [1]**   3/4
**alerts [1]**   17/7
**all [28]**   4/22 8/2 14/11
14/19 15/1 17/6 19/22 20/8
20/24 22/11 23/24 23/24
27/22 30/7 30/10 30/18
31/7 34/11 40/12 40/17
41/10 41/12 44/21 46/24

**47/12 48/6 49/2 51/4**
**allegedly [1]**   36/10
**allow [3]**   15/1 35/8 39/14
**allowing [1]**   37/4
**along [1]**   21/2
**alphabetical [1]**   17/5
**already [3]**   5/16 6/19
46/23
**also [5]**   3/25 13/18 36/1
42/23 47/22
**alternative [1]**   20/23
**although [6]**   3/7 10/14
16/19 20/15 35/25 47/3
**ambiguity [4]**   11/10 23/7
23/7 30/17
**amendment [2]**   14/16 15/3
**amount [3]**   10/20 46/13
46/20
**analysis [1]**   10/10
**another [2]**   19/16 48/12
**answer [4]**   7/25 8/6 8/9
25/9
**answering [1]**   47/15
**answers [1]**   8/7
**any [22]**   4/20 5/8 7/3 7/15
8/24 8/25 9/5 14/10 15/6
15/11 15/15 16/14 18/18
20/9 22/3 27/11 28/13
30/10 32/18 40/16 42/2
44/12
**anyone [2]**   11/19 32/17
**anything [12]**   6/16 12/17
12/17 21/9 26/19 32/19
44/8 44/10 48/2 49/10 52/1
52/4
**apparent [2]**   51/2 51/8
**apparently [2]**   33/24 37/5
**appear [1]**   44/16
**APPEARANCES [1]**   1/12
**appears [1]**   21/5
**appellate [1]**   40/25
**applied [2]**   39/25 43/4
**applies [3]**   5/8 16/8 18/20
**apply [1]**   7/24
**applying [1]**   7/8
**appreciate [5]**   10/5 21/15
45/11 46/4 52/3
**approach [1]**   2/4
**appropriate [2]**   15/20
44/24
**archive [1]**   13/21
**archives [1]**   13/19
**are [72]**
**areas [1]**   36/19
**aren't [4]**   8/15 13/16
29/17 42/10
**arguably [1]**   23/3
**argued [3]**   30/4 31/13 39/9
**argument [9]**   5/7 8/19 16/4
16/5 16/8 17/20 19/19
31/14 39/13
**arguments [2]**   4/13 6/3
**around [1]**   47/14
**articulate [5]**   24/10 25/21
28/6 35/1 41/15
**articulated [1]**   33/2
**articulation [1]**   32/18
**as [67]**
**ask [5]**   8/18 20/6 33/15
41/11 42/19
**asked [1]**   31/9

**A**

asking **[3]**   15/18 28/1 32/23
asserted **[1]**   39/7
asserting **[1]**   22/8
assessment **[1]**   49/22
assuming **[1]**   44/15
at **[69]**
attempt **[2]**   13/13 14/7
attempted **[1]**   43/24
Attorney **[1]**   40/10
attorneys **[1]**   49/25
authority **[1]**   40/16
authorized **[1]**   35/24
Avenue **[2]**   1/17 1/22
avoids **[1]**   34/11
aware **[2]**   3/2 40/15
away **[1]**   32/19

**B**

back **[10]**   3/1 4/14 5/20 14/20 30/23 32/3 34/12 37/13 42/13 51/14
background **[1]**   10/5
Bailey **[1]**   2/13
balance **[1]**   40/22
ball **[1]**   22/10
Bankruptcy **[1]**   1/21
based **[3]**   14/16 33/24 44/9
basic **[1]**   18/18
basically **[1]**   14/4
basis **[2]**   9/21 46/19
Bates **[1]**   12/12
be **[122]**
bear **[1]**   2/22
because **[35]**   5/20 6/4 7/12 8/16 8/23 12/16 13/25 14/20 14/24 14/25 16/12 17/21 18/23 20/8 26/18 30/24 32/2 32/19 32/22 33/8 34/8 36/14 37/1 37/4 37/10 37/11 43/2 44/20 45/2 46/24 48/1 49/2 49/14 49/17 50/19
been **[19]**   2/25 3/8 3/9 8/12 9/9 20/4 22/3 28/17 29/22 30/25 33/2 33/20 36/3 39/4 40/12 41/13 43/3 45/23 51/9
before **[12]**   1/10 8/19 16/1 31/1 31/10 36/22 38/2 39/2 42/25 43/24 45/5 46/12
begun **[1]**   4/15
behalf **[1]**   2/10
being **[12]**   6/18 8/11 10/12 14/2 14/5 18/25 22/12 26/14 36/15 36/16 50/13 51/20
believe **[8]**   9/14 14/2 18/13 25/5 36/24 45/18 45/19 47/3
believes **[1]**   33/17
belong **[1]**   40/20
belongs **[2]**   7/21 7/21
Berman **[1]**   2/11
bet **[1]**   12/18
between **[8]**   5/11 14/25 19/8 19/24 34/1 34/23 36/18 42/1
beyond **[1]**   47/11

binds **[1]**   25/17
bit **[10]**   4/4 4/12 13/17 16/25 19/8 30/14 32/16 38/14 40/23 42/24
bodies **[1]**   34/6
book **[3]**   22/21 22/23 25/11
both **[6]**   2/15 8/24 12/12 21/24 27/2 51/23
bound **[2]**   28/21 33/18
boxes **[1]**   48/2
Boy **[1]**   6/11
Branch **[1]**   29/6
breadth **[1]**   16/13
brief **[1]**   12/1
bring **[2]**   14/7 32/3
broad **[8]**   8/17 8/19 43/5 43/5 43/5 44/16 49/8 50/13
broader **[3]**   18/5 18/12 18/12
broadly **[3]**   42/23 43/19 49/9
buckets **[1]**   18/9
Bunnell **[6]**   3/5 27/2 36/5 45/20 46/1 46/6
Bunnell's **[1]**   8/21
burden **[4]**   17/18 20/17 46/20 51/4
burdens **[3]**   4/6 35/22 51/2
burdensome **[11]**   16/17 16/24 17/1 20/16 21/23 27/25 33/9 36/25 37/2 51/9 51/10
burdensomeness **[7]**   4/12 10/14 16/4 16/7 18/22 50/14 51/12
business **[50]**   6/17 7/19 8/25 11/1 11/13 11/14 11/16 11/23 14/15 17/12 17/14 17/23 18/3 18/15 19/1 19/3 23/3 23/18 23/25 24/4 25/8 26/14 26/17 27/2 30/11 31/8 31/12 33/4 35/9 35/25 37/5 37/17 37/18 37/21 37/24 38/4 38/6 38/7 38/23 41/20 42/17 43/21 44/19 44/23 46/9 47/1 47/2 47/17 49/5 49/11
but **[70]**

**C**

call **[2]**   27/23 49/19
came **[1]**   9/1
camp **[1]**   19/6
can **[43]**   9/18 12/17 13/11 14/23 17/10 23/10 23/11 24/12 28/25 30/14 31/12 31/19 32/11 33/7 34/7 34/19 35/17 38/9 38/15 38/18 38/19 38/24 40/15 40/18 41/13 41/22 42/9 42/10 42/14 45/12 46/7 46/11 46/14 47/3 48/2 48/3 48/8 48/15 48/15 50/4 50/8 50/12 50/19
can't **[14]**   20/19 24/13 25/21 26/18 27/21 28/6 28/14 34/11 34/12 36/21 39/15 40/1 41/1 43/18
capture **[4]**   26/25 27/7 36/14 44/17
captured **[3]**   9/5 44/11

44/18
case **[37]**   2/13 3/2 3/8 3/21 8/7 8/13 8/16 9/3 10/3 10/9 10/15 11/5 11/20 11/22 12/1 12/11 12/12 12/24 14/17 16/9 16/10 17/25 18/1 18/5 18/7 20/9 20/21 22/9 23/22 28/4 31/6 35/1 39/4 40/25 43/16 51/17 51/21
cases **[2]**   12/4 29/22
categories **[1]**   33/6
category **[1]**   34/16
CCs **[1]**   36/5
CEI **[2]**   39/4 40/25
certain **[2]**   3/12 3/16
certainly **[10]**   9/25 12/24 28/5 29/22 42/4 44/5 45/10 47/6 48/15 49/23
certify **[1]**   53/3
chaff **[1]**   47/24
chained **[1]**   16/2
chance **[2]**   17/13 20/11
change **[5]**   44/8 47/21 50/8 50/12 50/15
charged **[1]**   38/24
chat **[1]**   22/25
check **[4]**   9/12 9/17 9/21 45/21
chose **[1]**   36/11
Christian **[1]**   3/5
Chutkan **[2]**   16/10 17/25
Chutkan's **[2]**   18/4 19/9
circuit **[2]**   10/10 28/11
circuit's **[1]**   28/17
circumstance **[1]**   17/5
circumstances **[5]**   2/20 8/15 16/2 32/22 35/18
cited **[3]**   12/1 12/11 43/3
Civil **[3]**   1/3 1/17 2/2
claim **[2]**   3/8 7/23
claimed **[2]**   33/8 36/9
claiming **[1]**   36/10
clarification **[7]**   23/19 24/8 42/15 42/23 43/24 50/5 51/18
clarified **[1]**   47/15
clarify **[3]**   4/5 37/15 37/15
clarifying **[1]**   37/15
clarity **[2]**   14/10 16/5
clear **[14]**   3/19 6/4 7/23 11/21 13/7 28/11 28/18 29/21 32/22 33/23 34/2 42/25 47/5 47/17
clearly **[3]**   22/18 26/6 48/4
coextensive **[1]**   16/11
coffee **[1]**   25/14
COLUMBIA **[1]**   1/1
come **[10]**   4/20 20/7 20/15 21/6 34/11 37/13 39/1 42/13 45/12 51/14
compel **[1]**   40/19
Competitive **[1]**   7/13
completely **[1]**   30/23
complexities **[1]**   29/10
compliance **[3]**   9/4 10/2 36/7
complicated **[1]**   42/12
complying **[1]**   36/3

**C**

component [1]  4/21
composition [1]  48/17
compounds [1]  40/13
compromises [1]  21/6
compulsion [1]  40/5
computer [3]  1/25 39/17
40/3
computer-aided [1]  1/25
concede [1]  37/14
concern [2]  12/4 18/3
concerned [2]  3/7 39/21
concerning [11]  11/12 12/1
12/3 12/5 12/13 19/20 23/8
30/10 31/15 31/22 37/16
concerns [2]  3/2 39/2
concession [2]  50/7 50/10
concluded [2]  12/15 33/19
conduct [30]  3/19 11/22
14/14 18/14 19/1 22/1 23/3
23/17 24/3 24/22 26/12
26/13 32/24 35/9 35/24
37/18 37/20 37/24 38/5
38/7 38/22 41/19 42/16
43/21 44/9 44/19 46/8
47/16 49/4 49/10
conducted [5]  3/13 8/25
13/8 24/1 34/8
conducting [5]  10/25 11/14
17/11 19/3 21/4
conferred [1]  20/18
conflated [2]  10/15 18/23
connection [1]  44/23
connections [1]  23/13
consideration [2]  2/22
4/24
considered [1]  39/6
constitute [9]  19/17 38/22
41/19 42/16 43/10 43/17
44/19 46/8 47/16
constitutes [5]  19/11 25/6
29/23 31/11 49/4
Constitution [1]  1/22
construed [1]  48/20
consulted [2]  9/23 51/5
contend [2]  6/6 8/13
context [4]  18/24 25/17
27/24 46/21
contrary [1]  36/22
conversation [1]  49/20
convince [1]  26/19
convinced [4]  10/18 20/14
51/1 51/19
cooperation [2]  39/18 40/6
cooperative [1]  41/13
copied [2]  9/2 9/20
copy [1]  14/5
copy-ee [1]  14/5
copying [1]  47/8
correct [8]  5/3 5/4 16/22
19/25 21/24 43/19 45/19
53/4
corrected [1]  47/3
could [16]  5/10 9/16 10/21
10/24 11/17 14/10 14/15
17/17 17/23 18/24 26/17
30/23 34/4 34/23 35/2
45/10
couldn't [1]  14/1
counsel [4]  2/4 2/11 2/13

25/22
country [1]  12/19
couple [4]  3/18 5/22 29/18
47/11
course [5]  23/12 30/14
32/1 33/7 49/15
court [15]  1/1 1/10 1/20
1/21 2/20 3/24 12/15 15/19
21/21 39/12 39/13 40/25
42/2 42/14 51/3
Court's [2]  9/10 15/2
Courts [2]  1/21 29/13
covered [1]  25/15
crafting [1]  20/3
create [1]  43/10
creation [1]  36/12
critical [1]  37/3
cross [1]  51/23
cross-motion [1]  51/23
CSR [3]  1/20 53/3 53/10
cup [1]  25/14
curious [1]  15/9
currently [3]  50/24 51/3
51/11
cut [2]  29/21 49/8
cv [1]  1/4

**D**

Dale [1]  12/12
data [1]  45/3
DATE [1]  53/10
day [5]  16/1 33/20 35/16
49/18 50/20
days [4]  2/21 42/4 42/7
50/17
DC [4]  1/5 1/14 1/18 1/23
dealing [3]  43/9 43/11
43/15
dealt [1]  46/18
December [1]  39/21
decide [1]  19/11
decided [1]  49/12
decision [5]  7/13 7/14
19/9 43/14 43/14
decisions [4]  7/15 26/14
45/1 45/8
declaration [4]  4/2 20/22
51/5 51/16
declarations [1]  51/1
Defendant [2]  1/7 1/16
defer [2]  4/23 14/23
define [1]  34/21
defined [2]  30/1 49/16
definition [15]  3/22 6/5
26/10 26/13 28/11 28/15
43/1 43/6 43/13 43/20
44/14 44/20 49/5 49/6
49/17
definitively [1]  4/21
degree [2]  22/2 36/23
degrees [1]  24/15
demonstrate [1]  10/2
demonstrates [1]  16/11
demonstrating [1]  43/21
deny [1]  51/23
department [13]  1/6 1/16
2/3 2/10 2/11 3/3 11/11
17/24 18/14 25/12 36/4
49/3 49/25
Department's [2]  5/16 29/2
describe [7]  10/17 10/19

11/6 11/8 12/2 18/23 51/20
described [3]  10/9 12/6
13/16
describes [1]  41/21
describing [3]  18/22 37/25
48/20
description [2]  13/1 44/18
desk [2]  35/15 35/16
detail [1]  20/25
determination [2]  9/10
49/12
determine [2]  10/11 18/2
determined [4]  3/15 4/9
4/9 13/8
determining [1]  29/10
developed [1]  2/21
development [1]  6/2
developments [4]  3/1 14/24
21/7 47/20
DHS [4]  3/17 6/9 15/22
21/4
dictate [1]  46/12
did [9]  3/21 6/25 7/1 9/22
16/20 21/22 36/5 37/10
42/25
didn't [4]  3/19 23/15
31/21 37/11
difference [1]  13/11
different [8]  7/12 18/10
19/21 23/13 23/18 26/10
26/16 35/23
differently [2]  13/18
13/18
difficult [3]  33/3 37/10
51/7
difficulties [2]  20/1
36/12
difficulty [2]  22/3 51/17
directly [1]  42/22
disagree [2]  30/23 50/9
disagreeing [1]  31/2
discern [1]  13/12
discovery [4]  23/9 31/18
31/20 31/24
discrete [1]  10/7
discuss [4]  4/16 15/21
15/24 33/6 38/11
discussions [3]  14/25
33/24 42/1
dispute [1]  5/10
distinct [1]  10/14
distinction [8]  19/23 22/9
22/13 22/14 33/25 35/12
35/14 39/24
distinctions [2]  36/18
38/10
distinguishable [1]  18/8
DISTRICT [5]  1/1 1/1 1/10
1/21 29/13
Division [1]  1/17
do [56]
docket [1]  39/7
document [6]  7/18 7/20
7/22 20/10 20/11 49/14
documents [19]  6/8 7/14
7/15 7/16 7/24 11/6 11/22
12/5 12/6 12/13 13/16 14/7
18/14 39/14 41/21 42/16
43/20 44/18 45/6
does [13]  7/11 12/2 19/16
23/2 24/14 26/24 27/24

**D**

**does... [6]**  30/17 32/16
40/8 43/16 44/16 48/1
**doesn't [12]**  5/7 6/2 11/6
20/9 27/13 28/24 42/11
43/12 47/2 47/23 50/15
51/19
**doing [16]**  10/23 13/3 13/4
13/5 13/19 13/21 13/24
24/24 26/3 27/2 30/18 32/9
34/24 35/20 45/6 46/10
**domestic [1]**  22/22
**don't [49]**  2/18 7/4 7/9
7/24 8/6 8/9 10/17 10/18
11/19 15/11 15/15 17/7
17/9 19/7 20/7 22/11 24/8
24/12 26/2 26/12 28/12
28/13 28/20 30/3 30/4
30/18 30/21 31/9 32/2
32/19 33/2 34/1 34/9 34/10
35/19 35/25 36/14 36/15
36/25 39/23 40/14 42/25
48/6 48/8 48/16 49/8 49/15
49/17 51/11
**done [14]**  6/19 11/23 14/6
15/14 17/17 20/18 21/23
22/6 22/7 26/8 26/19 27/10
37/5 41/5
**door [1]**  30/25
**dot [9]**  29/5 29/5 29/5
29/7 29/7 29/7 29/8 29/8
29/8
**double [2]**  9/12 9/17
**doubt [1]**  9/13
**down [6]**  5/10 25/14 30/25
32/10 47/6 51/12
**drafting [1]**  52/1
**dropping [1]**  41/2
**duplicate [1]**  47/2
**duplicative [1]**  46/23
**during [1]**  23/25
**duties [2]**  2/14 49/15

**E**

**e-mail [62]**
**e-mails [54]**
**each [2]**  18/2 22/1
**easily [2]**  35/2 38/10
**ee [1]**  14/5
**effect [1]**  15/4
**efficient [2]**  32/13 32/14
**effort [1]**  46/5
**efforts [2]**  8/21 20/9
**either [3]**  9/2 31/4 34/9
**else [6]**  6/16 27/13 28/5
35/2 39/17 47/1
**embodied [1]**  30/8
**employee [1]**  40/1
**employee's [2]**  29/4 40/2
**employees [2]**  35/20 39/10
**empowers [1]**  29/12
**encapsulated [1]**  22/3
**encompasses [1]**  43/20
**end [4]**  13/14 14/20 49/18
50/20
**endlessly [1]**  31/18
**enforcement [1]**  40/10
**enjoin [1]**  29/13
**enough [8]**  27/4 27/18 32/7
45/14 47/13 47/17 49/8

50/11
**enter [1]**  50/17
**entering [1]**  52/1
**Enterprise [1]**  7/13
**entire [1]**  36/14
**entirely [1]**  50/24
**entitled [6]**  8/14 8/16
23/4 32/13 32/20 53/5
**erroneously [1]**  33/8
**essentially [1]**  14/19
**even [6]**  2/17 22/11 40/14
45/24 51/9 51/10
**event [3]**  7/3 7/16 44/12
**ever [2]**  23/11 43/3
**every [2]**  10/23 20/10
**everything [6]**  5/11 7/2
23/10 26/1 44/17 44/17
**evidence [8]**  19/11 19/17
24/20 24/21 43/13 44/25
45/7 47/9
**evincing [3]**  18/14 19/8
19/24
**exact [3]**  7/5 28/20 35/6
**exactly [3]**  41/3 46/12
50/2
**exaggeration [1]**  12/20
**example [13]**  12/5 12/11
13/20 14/12 16/14 17/2
17/21 22/20 25/9 25/9
26/15 48/10 49/13
**examples [1]**  29/9
**except [1]**  8/10
**exclude [3]**  48/2 48/3 48/8
**excluding [1]**  34/5
**exhaust [1]**  8/20
**existing [2]**  40/1 40/1
**expect [1]**  3/18
**expects [1]**  3/17
**experiences [1]**  22/25
**explain [2]**  12/8 20/21
**explained [1]**  22/2
**explaining [1]**  20/22
**explains [1]**  19/9
**extent [3]**  6/7 37/9 43/12
**eyes [1]**  20/10

**F**

**fact [10]**  4/5 10/21 10/24
16/13 17/21 33/15 40/11
46/3 46/4 47/1
**facts [1]**  4/15
**factual [2]**  2/20 47/20
**factually [1]**  18/8
**failed [1]**  11/8
**fair [9]**  4/11 10/20 27/4
27/18 28/6 32/7 46/13
47/13 50/11
**fairly [3]**  17/18 27/15
34/18
**fall [2]**  19/6 49/5
**familiar [2]**  31/16 31/17
**family [3]**  46/16 48/7
48/12
**far [9]**  15/2 18/5 18/5
18/16 20/1 43/23 44/3 44/7
45/14
**fashion [1]**  30/16
**fault [2]**  41/7 41/7
**federal [55]**
**feel [3]**  27/24 32/16 33/13
**feels [1]**  39/13

**few [1]**  2/21
**field [1]**  33/10
**fight [1]**  31/17
**figure [4]**  10/24 19/5
32/10 34/19
**file [4]**  5/10 42/7 51/14
51/24
**filed [1]**  12/19
**find [7]**  6/14 21/23 27/21
29/1 40/21 44/2 46/21
**find some [1]**  40/21
**fine [2]**  24/14 42/8
**first [8]**  8/20 10/16 14/22
17/6 22/17 29/18 32/5 44/2
**flexible [1]**  42/5
**FOIA [25]**  3/20 4/10 4/19
6/7 6/9 7/3 7/24 8/4 9/8
12/19 13/1 14/18 19/22
20/8 20/12 23/22 29/11
29/12 30/2 35/1 36/13 37/3
41/6 47/10 48/22
**following [1]**  41/10
**Fonda [1]**  12/11
**footnote [1]**  39/8
**foregoing [1]**  53/4
**forget [1]**  9/16
**former [2]**  2/12 3/3
**forth [3]**  5/12 34/12 51/2
**forward [3]**  15/15 44/9
47/22
**forwarded [1]**  9/3
**forwarding [2]**  9/15 47/8
**four [5]**  3/3 28/3 30/9
34/15 34/23
**FRA [5]**  3/22 9/25 10/2
44/5 48/21
**frame [1]**  13/18
**framed [1]**  50/24
**frankly [1]**  36/1
**frequently [1]**  43/16
**Friday [3]**  2/24 4/15 15/25
**friend [5]**  17/15 22/21
22/23 25/11 26/18
**friendly [2]**  14/15 50/4
**friends [2]**  26/22 46/16
**front [4]**  13/14 26/13
28/21 29/22
**frustrated [1]**  26/18
**full [3]**  7/4 36/17 37/8
**fully [2]**  18/20 37/7
**functional [1]**  15/4
**functionally [3]**  47/19
47/21 50/15
**functions [5]**  17/1 17/2
43/22 45/1 45/7
**further [9]**  4/6 5/9 5/10
15/21 21/11 44/13 50/25
51/24 52/4
**future [1]**  22/25

**G**

**game [1]**  38/2
**gathered [1]**  47/14
**gave [3]**  24/25 35/3 35/4
**general [2]**  34/5 40/10
**generated [4]**  29/5 29/7
49/4 49/15
**generating [1]**  43/16
**get [15]**  5/20 8/19 18/23
26/2 26/19 27/19 32/6 32/9
32/12 33/10 33/13 34/10

## G

get... [3]   37/7 40/11 52/1
getting [4]   25/19 25/23
29/18 40/23
give [8]   15/24 21/13 28/15
28/25 32/18 39/16 40/3
40/17
given [9]   3/22 4/16 17/1
21/7 35/21 38/14 46/3
47/19 50/7
giving [1]   25/25
global [2]   4/17 4/22
gloss [3]   11/3 13/11 50/11
Gmail [1]   4/3
go [17]   6/13 6/15 16/8
16/24 17/3 27/8 33/9 38/2
38/2 39/17 40/11 40/18
41/13 41/18 42/22 46/7
51/4
goes [4]   18/16 38/16 44/4
45/15
going [27]   5/14 5/19 5/20
6/19 10/21 15/8 15/12 27/3
27/12 28/23 32/18 32/20
34/2 34/6 34/13 34/18
38/24 39/17 41/6 44/5 44/9
45/6 47/21 47/21 49/18
49/19 50/16
gone [1]   39/25
good [6]   2/6 2/8 2/9 21/17
41/24 41/25
got [7]   14/13 19/21 20/20
24/13 27/22 35/3 40/4
gotten [2]   33/7 47/14
government [68]
Government's [4]   14/10
20/17 44/8 50/25
grab [1]   17/15
grantees [1]   29/8
great [1]   50/20
greater [1]   20/25
grounds [1]   31/22
guess [11]   5/22 7/4 7/19
9/24 10/17 12/22 14/22
16/25 33/12 42/22 47/22
guidance [4]   25/25 29/18
38/18 50/23
guidances [1]   49/24

## H

had [20]   2/25 3/11 4/3 4/9
6/13 11/18 16/20 16/24
17/3 19/12 20/3 20/4 24/24
29/22 39/6 39/24 46/1 47/7
47/7 51/1
half [1]   12/18
hand [2]   7/9 23/16
handled [1]   38/10
handling [1]   2/14
happen [5]   9/22 32/13
32/14 45/13 47/21
happening [1]   44/3
happy [6]   22/24 25/14
26/22 32/4 33/6 33/11
hard [6]   34/21 34/24 41/3
41/6 49/11 49/19
has [27]   2/13 3/8 3/9 4/9
4/13 5/2 7/23 8/23 11/7
13/8 13/8 13/9 14/17 19/15
19/16 22/7 27/9 33/2 33/16

36/4 38/17 39/1 39/4 39/9
45/17 46/23 51/5
hasn't [2]   20/18 22/3
have [84]
haven't [3]   4/20 31/13
33/7
having [2]   18/19 49/20
he [33]   3/13 3/15 3/16
3/19 3/21 4/7 4/9 4/9 6/12
6/13 6/14 6/21 6/25 7/1
7/2 13/8 13/8 13/9 16/19
16/24 22/23 26/2 26/6 26/9
33/16 33/19 34/3 34/5 34/8
34/24 42/25 43/4 46/4
he'll [1]   5/13
he's [4]   6/19 15/8 26/8
44/4
head [4]   11/15 43/9 43/15
45/4
Heaps [1]   2/13
hearing [5]   1/9 2/23 3/6
3/6 44/1
held [1]   41/8
help [3]   28/8 32/23 32/24
helped [1]   41/17
helpful [8]   10/5 21/14
25/25 31/8 31/10 37/23
41/23 51/22
her [1]   18/18
here [43]   2/14 5/6 18/6
18/18 18/20 19/1 19/11
21/6 22/9 23/13 23/13
23/13 24/10 24/11 25/22
26/2 26/19 27/14 27/15
28/8 29/2 30/19 32/8 32/12
33/10 34/15 34/25 35/3
36/11 36/12 36/20 37/3
38/14 39/3 39/21 40/2
40/25 41/5 44/1 45/22 49/1
50/6 50/22
here's [2]   32/15 51/16
Hey [1]   17/15
high [1]   49/2
higher [2]   4/5 4/12
him [5]   13/10 25/24 25/25
45/25 51/10
his [16]   3/12 3/13 3/14
4/3 6/4 13/9 15/9 16/20
22/21 22/23 25/10 25/11
26/21 26/22 33/9 34/8
Historically [1]   36/2
hit [1]   15/9
hold [3]   15/19 41/9 51/25
HOMELAND [7]   1/6 2/3 2/10
3/3 17/24 25/12 35/15
Honor [22]   2/6 2/9 2/19
5/4 8/10 19/25 21/12 21/17
21/25 24/17 27/9 30/3
30/23 31/11 33/1 39/3
39/20 40/24 42/21 43/18
52/3 52/6
Honor's [4]   2/22 12/22
43/2 45/11
HONORABLE [1]   1/10
Hook [3]   1/20 53/3 53/10
hope [2]   45/11 50/18
hours [3]   6/23 20/24 35/16
house [2]   39/16 40/2
how [15]   4/8 15/8 15/16
15/17 16/11 24/12 25/6
27/21 28/24 34/8 35/3 42/1

45/16 48/18 50/21
huge [1]   46/20
hundreds [1]   17/3

## I

I'd [2]   15/3 22/24
I'll [12]   2/12 2/14 20/2
20/6 20/14 21/13 26/22
42/13 42/18 42/18 50/17
51/25
I'm [45]   7/1 7/12 8/6 10/6
10/17 12/8 12/9 12/10 15/9
16/25 22/19 24/14 24/19
25/13 25/14 26/3 26/3 26/4
26/18 27/12 28/5 29/2
29/18 29/20 30/18 31/2
32/7 32/11 32/18 32/20
32/23 33/12 34/7 38/15
39/17 40/7 40/15 41/10
43/2 44/14 46/11 46/23
47/14 50/24 51/18
I've [3]   29/21 49/12 49/24
idea [1]   20/3
identify [4]   2/5 28/24
33/3 35/2
if [71]
illustrate [1]   29/9
imagine [1]   48/15
important [4]   29/12 34/25
35/13 36/11
importantly [1]   36/20
imposing [1]   48/22
impossible [1]   36/25
impression [1]   22/5
in [158]
inboxes [1]   48/17
INC [2]   1/3 1/13
inclination [3]   51/20
51/21 51/22
include [2]   29/15 37/11
includes [1]   44/21
incoming [1]   4/17
incorporated [2]   2/3 48/21
increase [1]   5/20
incredibly [1]   26/18
indicate [1]   41/1
indicated [8]   3/6 3/11 4/2
5/14 13/2 13/18 17/25 36/4
indicates [4]   11/5 12/2
12/24 22/1
individual [5]   18/19 19/2
27/11 49/12 49/19
individual's [1]   12/15
individualized [1]   48/7
individuals [14]   20/19
22/2 22/6 27/6 28/3 30/9
30/12 34/15 38/17 38/19
39/19 49/1 51/6 51/6
information [7]   7/5 15/11
15/15 15/23 18/10 43/2
44/21
informational [1]   45/3
informed [1]   4/14
inherent [1]   23/7
initiate [1]   40/9
inquiry [2]   10/16 10/17
insofar [1]   18/8
instances [2]   12/12 12/23
instead [1]   28/2
Institute [1]   7/14
instructions [1]   25/1

**I**

intent [1]   13/12
interest [2]   3/9 39/7
interested [3]   26/21 26/23
 38/1
interesting [1]   7/11
interests [3]   38/15 39/10
 40/22
interpretation [1]   14/7
intervention [1]   15/2
into [5]   4/12 31/18 39/17
 41/2 48/22
invoking [1]   12/10
involved [6]   7/6 18/9
 20/24 28/4 34/15 50/21
involves [1]   43/13
is [165]
is they [1]   25/22
isn't [5]   8/17 13/15 30/6
 30/7 35/1
issue [16]   7/12 11/2 11/24
 16/12 18/6 20/2 20/4 20/16
 21/1 24/12 29/12 36/2 39/6
 42/10 43/23 51/4
issued [3]   8/12 8/13 39/5
issues [9]   3/7 10/15 15/24
 19/20 21/3 22/22 50/14
 50/19 50/21
it [143]
it's [71]
its [7]   5/7 6/7 8/3 13/11
 36/13 44/25 47/1
itself [5]   18/13 18/16
 24/22 30/17 47/23

**J**

James [3]   1/13 1/16 2/6
Jane [1]   12/11
January [1]   5/25
Jeff [3]   1/20 53/3 53/10
Jeh [3]   3/4 27/1 33/9
Jim [1]   2/9
job [1]   11/18
Johnson [27]   3/4 3/12 4/2
 5/21 6/4 7/22 7/22 8/23
 10/24 13/23 15/8 16/17
 21/8 22/7 22/20 25/10
 25/23 27/1 33/9 33/14
 33/16 44/3 44/15 45/15
 46/3 48/25 51/8
Johnson's [7]   2/25 5/8
 6/12 11/17 13/21 33/25
 42/24
JUDGE [14]   1/10 12/12
 14/13 16/10 17/25 18/4
 19/9 23/17 24/11 24/14
 39/4 39/8 39/11 51/14
judgment [7]   4/1 4/24 9/11
 27/23 33/18 49/19 49/23
judgments [1]   19/18
JUDICIAL [13]   1/3 1/13 2/2
 2/7 3/21 4/14 6/1 6/6 6/9
 8/13 29/6 43/23 44/6
jump [1]   42/25
jumping [1]   47/11
just [59]
JUSTICE [5]   1/16 2/12
 18/14 29/2 49/25
justify [1]   39/11

**K**

keep [1]   26/19
Kessler [3]   39/5 39/9
 39/12
kind [19]   4/17 7/6 12/10
 14/6 15/1 16/1 16/8 16/9
 16/11 16/14 18/9 18/19
 27/10 40/12 41/3 43/4 44/1
 44/2 47/23
kinds [5]   12/15 21/3 36/16
 38/9 50/14
Kissinger [1]   7/13
know [32]   4/18 7/24 8/6
 8/11 9/24 14/13 15/3 17/2
 19/3 19/15 20/22 21/4
 23/14 23/19 23/23 25/6
 27/14 27/15 28/24 34/1
 34/8 34/9 34/25 36/13
 36/14 36/15 36/19 36/21
 40/2 41/22 48/4 50/24

**L**

lack [2]   16/5 40/8
lacks [1]   40/5
landmark [3]   16/10 18/1
 27/25
language [3]   24/5 24/11
 28/21
large [2]   12/21 36/21
larger [1]   33/22
last [5]   2/21 2/23 2/24
 3/5 39/3
later [2]   36/9 41/4
law [9]   8/7 10/9 10/15
 11/5 12/1 12/24 16/9 23/5
 44/22
lawsuit [1]   27/6
lawyers [4]   23/9 31/16
 31/23 49/21
learned [5]   2/24 4/4 15/25
 15/25 36/20
learning [1]   4/4
least [10]   3/9 8/8 10/17
 17/13 17/16 36/5 36/22
 37/14 49/20 51/18
leave [2]   25/14 32/3
leaves [1]   46/17
leaving [1]   39/22
left [3]   2/13 17/2 27/11
legal [2]   16/10 50/21
Legislative [1]   29/6
legitimate [1]   44/25
lend [2]   16/13 47/23
less [3]   16/23 45/24 51/10
lesson [1]   16/16
let [11]   8/18 8/20 13/17
 19/13 28/25 32/2 32/10
 33/15 42/18 50/17 50/23
let's [5]   10/4 10/6 17/15
 25/22 34/13
level [5]   6/17 7/25 12/25
 22/12 49/16
lieu [1]   4/19
light [1]   4/24
like [15]   5/7 6/11 10/1
 11/13 12/14 14/24 15/17
 17/23 18/10 27/25 33/13
 39/15 46/6 47/23 48/2
likely [1]   14/8
limited [1]   34/18

**L (col 3)**

limiting [1]   33/21
line [1]   21/2
listen [1]   26/20
litigation [2]   29/23 36/9
little [9]   13/17 15/24
 16/25 19/8 30/14 32/16
 38/13 40/23 42/24
longer [2]   5/6 5/8
look [26]   17/7 17/9 19/10
 19/21 23/12 25/24 26/1
 26/4 27/21 27/22 28/3 28/7
 28/9 30/18 32/25 34/13
 34/17 38/25 46/7 46/14
 48/2 48/6 48/7 48/8 48/13
 49/9
looked [2]   17/21 26/9
looking [14]   9/19 10/22
 27/7 29/2 30/16 32/15
 34/16 38/5 38/20 38/22
 41/19 41/22 44/14 50/5
looks [1]   27/25
lose [1]   24/7
lot [4]   19/5 19/21 20/20
 35/21
love [1]   11/18
lower [1]   43/11
lunch [1]   17/15

**M**

made [9]   3/21 5/25 6/10
 26/14 34/2 35/12 36/18
 42/25 44/21
mail [62]
mails [54]
maintain [1]   46/25
maintained [2]   13/20 36/6
majority [2]   43/9 49/3
make [9]   3/17 4/23 9/18
 9/21 19/18 26/3 27/22
 49/12 49/20
makes [1]   35/21
making [2]   43/14 43/14
managed [1]   44/2
manual [3]   6/23 7/8 16/15
many [7]   4/8 6/23 15/8
 15/16 20/2 21/21 45/16
March [1]   39/5
March 13th [1]   39/5
Marcia [1]   2/11
Marone [3]   3/5 13/7 25/1
Marone's [3]   5/2 13/3 13/6
Massachusetts [1]   1/17
material [1]   29/10
matter [3]   49/23 50/20
 53/5
matters [1]   35/3
may [24]   1/5 3/12 3/15 5/9
 7/2 7/2 10/13 12/20 17/8
 19/5 19/8 19/19 22/8 22/18
 24/7 29/15 32/8 40/18
 40/22 43/11 47/1 49/11
 51/9 51/12
maybe [9]   15/23 21/6 33/14
 33/19 35/19 36/1 40/3
 42/13 46/17
Mayorkas [5]   3/5 36/5
 45/17 46/2 46/6
Mayorkas' [1]   8/21
me [37]   2/11 5/5 7/9 7/23
 8/18 8/20 12/8 13/17 14/13
 19/13 23/15 23/16 24/10

**M**

me... **[24]**   24/13 25/21
26/13 26/20 28/5 28/15
28/21 28/25 28/25 29/22
32/14 33/15 33/23 34/17
35/23 37/25 38/23 39/16
40/17 42/11 44/15 45/16
50/17 51/14
mean **[47]**   7/1 9/18 10/4
10/19 11/10 11/15 11/16
12/4 12/8 14/22 15/13
22/15 22/17 22/20 23/2
24/1 24/7 24/8 24/12 24/15
25/18 25/22 25/24 26/24
27/14 28/4 28/17 28/20
30/5 30/18 30/18 30/19
30/25 32/3 32/17 32/18
33/12 34/21 35/14 35/23
36/1 37/6 37/9 38/3 39/18
40/22 42/4
means **[4]**   13/25 19/4 24/13
27/24
mechanics **[1]**   50/20
mechanism **[1]**   35/5
media **[1]**   18/10
meet **[1]**   22/24
meets **[1]**   49/17
meld **[1]**   16/9
members **[3]**   46/16 48/8
48/12
mention **[1]**   17/23
mentioning **[1]**   5/24
mentions **[1]**   14/3
merits **[1]**   10/6
messages **[1]**   36/16
metaphysically **[1]**   8/14
might **[25]**   4/23 6/13 6/17
10/20 15/20 17/14 17/14
18/2 19/12 20/10 20/21
22/10 29/20 32/20 33/20
35/18 37/20 38/16 39/2
40/4 40/15 45/23 48/6 50/9
50/25
million **[1]**   20/11
mind **[1]**   33/25
mine **[1]**   48/3
modify **[1]**   37/14
moment **[1]**   45/22
month **[3]**   15/21 15/23 52/2
months **[3]**   20/2 21/21
40/12
moot **[1]**   6/3
more **[20]**   3/25 15/3 15/23
15/24 16/20 18/8 18/9 18/9
20/21 21/9 27/25 36/1 36/8
36/10 42/23 43/11 48/7
49/9 50/20 51/17
more work **[1]**   20/21
MOSS **[1]**   1/10
most **[6]**   29/15 35/20 38/10
45/5 45/5 46/13
motion **[16]**   1/9 2/18 2/23
4/1 4/24 5/9 9/10 10/6
15/19 50/4 50/25 51/1
51/15 51/23 51/23 51/24
moved **[1]**   5/2
moving **[1]**   15/15
Mr **[1]**   25/1
Mr. **[28]**   2/8 2/17 5/2 8/21
8/21 13/3 13/6 13/7 14/12

20/6 21/16 27/2 36/5 36/5
42/14 42/15 42/18 42/19
44/18 45/17 45/20 46/1
46/2 46/3 46/6 46/6 50/9
52/5
Mr. Bunnell **[5]**   27/2 36/5
45/20 46/1 46/6
Mr. Bunnell's **[1]**   8/21
Mr. Johnson **[1]**   46/3
Mr. Marone **[1]**   13/7
Mr. Marone's **[3]**   5/2 13/3
13/6
Mr. Mayorkas **[4]**   36/5
45/17 46/2 46/6
Mr. Mayorkas' **[1]**   8/21
Mr. Peterson **[7]**   2/8 14/12
20/6 21/16 42/18 50/9 52/5
Mr. Peterson's **[2]**   42/15
44/18
Mr. Powers **[3]**   2/17 42/14
42/19
much **[8]**   11/19 15/17 20/18
27/11 27/13 42/2 47/21
50/15
must **[3]**   13/4 13/24 30/15
my **[18]**   5/1 16/19 18/4
19/14 22/5 22/25 25/9 25/9
35/7 37/13 41/12 43/8
45/21 45/23 49/13 49/15
51/20 51/22

**N**

name **[4]**   12/4 12/6 12/14
12/15
narrow **[4]**   17/18 20/4
26/22 33/7
narrowed **[1]**   30/15
narrower **[1]**   6/6
narrowing **[6]**   7/7 27/9
34/3 43/25 44/3 48/16
narrows **[1]**   17/16
nature **[6]**   7/5 16/12 17/21
36/13 37/4 50/15
necessarily **[7]**   6/3 10/22
27/1 27/3 43/5 44/12 47/2
need **[23]**   10/1 17/7 20/14
23/19 24/8 27/14 27/14
27/15 27/15 27/16 27/16
28/7 28/8 39/18 40/4 40/5
41/8 41/15 41/15 41/18
44/12 45/21 51/17
needed **[1]**   51/25
needs **[1]**   50/22
negotiations **[1]**   4/25
never **[2]**   36/9 36/19
new **[4]**   2/17 14/12 14/18
51/14
news **[2]**   17/7 48/4
next **[5]**   3/18 15/2 15/23
17/8 50/16
no **[25]**   1/4 3/7 5/6 8/22
9/6 9/9 9/13 13/9 14/17
16/7 21/11 21/11 22/10
23/11 23/16 24/24 26/7
26/7 26/7 26/20 35/5 37/9
39/23 39/23 52/6
non **[7]**   5/16 10/25 11/7
11/23 13/23 30/8 30/12
none **[1]**   22/5
nor **[1]**   28/21
not **[103]**

not agency **[1]**   29/8
note **[5]**   2/12 3/25 9/24
20/2 48/21
notes **[1]**   29/4
nothing **[1]**   34/8
notices **[1]**   8/12
now **[22]**   4/8 4/15 5/20 6/2
7/10 7/12 14/13 15/2 15/16
19/15 22/18 25/13 29/18
31/8 33/4 36/9 36/9 36/21
37/2 40/12 41/3 47/19
number **[6]**   3/16 4/4 4/13
15/12 20/24 39/7
NW **[2]**   1/17 1/22

**O**

Obama **[2]**   22/22 25/11
object **[2]**   16/16 31/21
obligates **[1]**   8/17
obligations **[2]**   48/23 50/1
obvious **[1]**   7/16
obviously **[7]**   9/8 21/25
30/14 34/9 38/3 45/11
47/10
occur **[1]**   15/13
occurred **[3]**   8/23 45/13
47/20
occurring **[2]**   3/23 50/16
of what **[1]**   41/4
off **[3]**   40/23 42/25 51/25
offhand **[1]**   8/7
office **[1]**   38/3
official **[25]**   1/21 8/25
11/1 11/12 11/14 11/22
17/22 18/1 18/3 23/18
23/24 23/25 24/3 24/24
25/8 26/17 30/11 31/8
31/12 33/4 37/17 38/3
47/16 49/14 49/15
officials **[15]**   3/4 18/9
30/24 34/24 35/4 36/10
41/12 41/12 41/14 41/14
43/12 44/7 46/18 48/23
49/2
often **[1]**   18/22
oh **[2]**   19/13 41/6
OIP **[5]**   29/3 29/19 31/3
31/4 31/4
okay **[10]**   2/15 15/6 16/3
17/7 21/9 38/8 41/25 42/6
52/3 52/7
on **[52]**   2/10 2/20 2/22
2/24 3/12 3/16 4/15 5/22
6/8 9/1 9/5 9/21 11/3 11/7
13/9 14/16 15/5 17/7 17/11
20/10 20/25 23/16 24/5
24/12 25/3 25/7 25/23
30/19 31/3 31/15 31/22
33/24 34/7 35/9 35/17
35/22 36/9 39/5 39/8 41/4
42/5 42/11 42/14 44/9
44/10 44/11 46/19 47/3
49/12 50/12 51/4 51/23
once **[2]**   6/14 14/6
one **[19]**   2/18 3/25 5/23
10/8 10/21 10/23 11/24
16/5 17/4 18/17 20/11
23/11 26/20 30/13 32/14
38/13 38/16 42/13 45/22
one-in-a-million **[1]**   20/11
ones **[2]**   19/6 48/7

**O**

ongoing [3]   5/23 5/25 14/25
only [5]   29/12 29/18 30/14 31/15 36/17
onus [1]   11/7
open [1]   28/5
operate [1]   14/16
operating [1]   16/1
operations [2]   45/1 45/8
opinion [2]   39/5 42/11
opportunity [4]   15/24 21/6 21/13 51/24
opposed [1]   11/9
or [70]
order [5]   8/12 17/5 37/6 39/22 50/18
ordered [1]   39/23
ordinarily [1]   35/19
ordinary [1]   35/1
organization [3]   43/22 44/25 45/7
organize [1]   17/3
organizing [1]   17/2
other [17]   7/5 7/14 19/14 20/18 21/3 23/16 24/10 25/24 27/5 34/15 34/23 37/20 43/25 44/7 45/2 45/8 49/1
others [3]   16/20 16/23 51/10
otherwise [2]   13/25 39/13
ought [3]   26/20 34/16 46/19
our [31]   3/5 4/1 5/24 6/3 6/21 9/9 9/25 11/4 12/1 12/11 14/23 17/20 18/11 18/16 19/25 21/20 21/22 24/23 24/23 33/24 35/6 37/11 43/4 44/1 44/7 45/11 46/13 47/6 47/18 49/25 50/12
out [18]   10/24 13/22 14/17 15/18 19/5 21/24 21/25 30/25 32/9 32/11 34/20 38/19 40/12 41/4 42/10 47/24 48/11 50/19
outrage [1]   23/14
outset [1]   13/14
outside [1]   25/18
over [9]   2/14 6/23 14/11 14/19 15/8 15/23 29/23 33/16 50/16
overly [5]   8/16 8/19 43/4 43/5 50/13
own [5]   22/1 24/21 36/12 49/13 49/25
ownership [1]   7/23

**P**

p.m [2]   1/6 52/8
page [2]   29/3 39/8
painstaking [3]   6/22 16/15 18/20
papers [2]   12/11 45/21
paragraphs [1]   29/19
parallel [1]   14/6
parents [1]   11/17
part [3]   4/3 14/5 16/11
particular [2]   26/4 32/4

particularly [3]   20/16 25/25 51/16
parties [16]   4/15 4/25 5/11 14/25 15/18 15/21 27/6 32/8 34/11 42/1 42/7 42/10 50/19 50/23 51/12 51/22
party [1]   31/21
password [1]   39/16
past [1]   25/19
pending [3]   9/10 10/3 50/4
people [7]   19/2 19/22 26/19 31/18 34/19 36/18 39/22
percent [5]   27/19 27/20 31/23 48/11 48/12
percentage [1]   12/21
perhaps [4]   5/14 6/12 19/9 37/15
period [6]   4/10 6/24 9/3 46/2 46/2 50/16
permitted [1]   41/1
person [3]   19/16 19/17 41/21
person's [2]   12/4 12/5
personal [6]   14/4 29/4 34/22 38/19 39/11 41/2
perspective [3]   6/12 21/18 21/20
persuaded [2]   39/13 50/25
pertains [1]   6/16
Peterson [9]   1/13 2/7 2/8 14/12 20/6 21/16 42/18 50/9 52/5
Peterson's [2]   42/15 44/18
phrase [1]   29/14
pick [1]   27/3
plaintiff [5]   1/4 1/13 2/7 11/20 14/9
plaintiffs [1]   50/5
planned [1]   9/6
platforms [1]   18/9
play [2]   4/6 18/17
plays [1]   4/12
please [2]   2/4 45/22
pleased [1]   21/21
podium [1]   2/4
point [40]   6/19 10/18 12/23 12/24 14/9 16/4 16/4 18/1 18/21 20/17 20/20 21/7 22/17 24/16 25/4 25/19 27/25 29/14 31/5 32/5 33/8 33/11 33/13 33/14 34/7 36/11 37/3 38/11 39/1 39/3 39/3 40/23 41/4 42/25 43/7 45/11 48/14 51/15 51/21 51/25
pointed [2]   21/25 44/15
points [1]   5/22
policies [2]   45/1 45/7
portraying [1]   43/21
position [17]   5/7 9/9 9/25 11/4 14/11 14/23 18/11 18/17 19/25 22/8 22/10 38/18 46/11 47/6 47/18 50/3 50/13
possession [5]   5/16 8/4 29/15 29/17 29/19
possible [3]   9/14 20/7 20/15
possibly [1]   23/10

Post [1]   17/6
posture [2]   5/14 19/17
potential [4]   4/22 4/25 39/2 48/18
potentially [1]   14/23
power [5]   40/5 40/8 40/11 40/16 40/18
Powers [5]   1/16 2/10 2/17 42/14 42/19
practical [2]   32/8 32/12
practically [1]   21/24
practice [4]   8/24 17/3 47/7 47/8
precisely [2]   10/11 39/6
prepare [1]   47/9
prepared [1]   25/13
preparing [1]   2/23
present [3]   22/9 51/19 51/23
presented [1]   20/1
preservation [3]   8/12 39/22 44/24
preserved [2]   8/11 44/24
pressing [1]   12/24
pressure [1]   35/16
presumably [3]   22/2 24/25 34/18
presumptively [1]   25/3
pretty [5]   11/21 27/24 35/13 42/11 48/14
prevail [1]   24/12
previously [1]   4/13
prior [1]   33/24
privacy [4]   38/14 39/2 39/7 39/10
private [24]   2/25 3/2 3/12 3/13 5/24 6/8 9/1 17/3 19/2 19/12 25/7 25/10 27/2 34/14 34/22 35/8 35/9 35/19 35/25 36/15 37/5 40/17 44/10 44/13
probably [6]   10/22 27/10 47/13 48/25 49/1 51/22
problem [6]   28/7 33/5 34/4 40/13 41/3 41/5
problematic [1]   12/16
problems [1]   36/2
procedures [2]   45/1 45/8
proceedings [6]   1/24 3/10 4/18 15/5 52/8 53/5
process [6]   5/25 6/1 17/19 32/9 39/19 43/14
processing [2]   4/18 21/5
produce [3]   6/1 23/15 27/20
produced [4]   1/25 5/11 15/12 15/16
producing [2]   13/22 49/7
production [10]   3/17 3/23 4/17 5/25 6/10 11/7 13/4 13/5 40/19 45/13
products [1]   48/5
properly [1]   47/12
property [2]   7/17 8/2
protecting [1]   23/9
provide [4]   26/1 38/18 42/2 51/24
provided [2]   29/7 49/24
public [1]   44/23
pull [1]   34/17
purposes [11]   3/14 8/4

**P**

**purposes... [9]**   10/25 13/1
19/3 22/9 29/11 46/6 46/9
47/10 50/3
**pursuant [4]**   3/20 3/20
8/11 44/4
**put [8]**   11/3 13/11 13/17
17/5 19/17 20/10 31/18
50/11
**putting [1]**   30/19
**puzzled [1]**   16/25

**Q**

**quantities [1]**   48/3
**question [19]**   7/20 7/25
8/1 8/6 8/7 8/10 9/24 10/8
10/13 10/13 18/22 23/6
37/13 42/13 42/19 42/22
47/11 47/15 50/21
**questions [3]**   10/8 14/24
21/11
**quickly [2]**   39/9 42/11
**quite [8]**   17/1 20/7 28/11
28/17 29/21 31/16 34/10
40/19

**R**

**raise [5]**   3/23 7/11 19/20
36/2 43/24
**raised [2]**   4/13 20/3
**raises [1]**   7/25
**raising [2]**   16/3 41/2
**RANDOLPH [1]**   1/10
**random [1]**   9/21
**ranked [1]**   43/12
**ranking [1]**   49/2
**rate [1]**   15/9
**RDM [1]**   1/4
**reach [3]**   20/4 31/11 51/13
**reading [1]**   31/3
**realize [1]**   10/14
**really [10]**   4/12 7/2 10/7
11/18 16/5 16/10 17/20
30/19 50/19 51/4
**realtime [1]**   1/22
**reason [2]**   28/13 29/12
**reasonable [8]**   8/17 11/3
18/24 20/9 21/4 38/18
41/21 46/9
**reasonableness [1]**   13/13
**reasonably [12]**   10/9 10/16
10/18 12/2 12/6 13/16
18/22 18/23 37/25 41/20
48/20 51/19
**reasoning [1]**   18/18
**rebuttal [1]**   21/14
**recall [2]**   45/18 45/25
**receipt [1]**   15/22
**receive [1]**   15/14
**received [1]**   44/22
**recent [2]**   14/24 21/7
**recently [2]**   36/1 42/24
**recipient [1]**   14/5
**recollection [4]**   16/19
18/4 43/8 45/23
**record [41]**   2/5 2/12 3/22
6/6 6/18 7/18 8/3 9/5 23/1
25/4 25/7 25/18 28/12
28/16 28/18 28/23 29/3
29/5 29/15 29/20 29/24

30/5 32/4 33/3 33/19 33/19
33/21 43/3 43/6 43/17
43/20 44/20 46/23 46/24
46/25 47/1 47/3 49/14
51/11 51/24 53/4
**recorded [3]**   1/24 29/6
44/21
**records [81]**
**refining [1]**   30/13
**reflect [3]**   19/1 26/12
26/14
**reflected [1]**   45/6
**reflecting [1]**   23/25
**reflects [2]**   43/14 51/11
**refused [1]**   37/1
**regard [1]**   41/23
**regarding [12]**   11/12 11/25
12/3 12/5 12/13 19/19
19/24 23/8 30/10 31/15
31/22 37/16
**regardless [1]**   8/14
**regards [1]**   33/5
**regimes [1]**   48/22
**regular [1]**   46/19
**rejects [1]**   39/12
**relate [6]**   12/17 14/14
17/22 18/3 23/3 37/20
**relates [4]**   7/19 23/12
23/14 26/16
**relating [21]**   11/12 11/25
12/3 12/14 12/20 19/20
19/24 22/22 23/8 24/14
24/14 24/15 25/8 27/24
30/11 31/7 31/15 31/21
33/4 37/16 49/10
**relevant [3]**   3/9 39/19
45/17
**rely [2]**   24/5 42/14
**remains [1]**   50/13
**Remind [1]**   45/16
**render [1]**   47/2
**report [3]**   42/7 50/18 52/2
**Reporter [2]**   1/20 1/21
**representations [1]**   44/9
**represented [2]**   8/24 47/7
**representing [1]**   21/21
**request [46]**   3/20 4/11
4/19 6/7 6/9 8/16 9/8 10/8
11/4 11/5 13/25 14/12
14/16 14/18 16/6 18/13
18/13 18/16 19/7 21/22
22/15 24/6 24/23 24/23
26/1 27/16 30/6 30/7 30/10
30/15 30/16 30/21 30/22
31/7 31/20 35/6 36/13 37/3
37/11 37/15 45/14 47/12
47/15 47/22 48/18 51/19
**requested [1]**   29/10
**requester [1]**   11/7
**requester's [3]**   12/14
13/12 41/6
**requesting [1]**   23/7
**requests [13]**   4/22 10/18
12/13 12/19 16/12 18/5
18/6 19/22 20/8 20/12 23/9
31/19 31/24
**require [4]**   20/9 20/13
27/11 42/6
**required [6]**   9/9 13/15
16/15 20/25 40/9 46/25
**requires [1]**   10/10

**requiring [1]**   50/18
**requisite [1]**   9/3
**residing [1]**   25/2
**resolution [1]**   4/18
**resolve [2]**   15/1 32/11
**resolved [1]**   18/24
**respect [29]**   5/2 5/8 5/15
6/3 6/4 7/19 8/20 9/7 9/8
9/25 10/16 13/2 13/10 16/5
16/18 18/18 19/23 20/16
21/7 24/17 28/10 30/3
33/14 39/20 39/25 40/24
45/25 48/25 51/3
**respond [2]**   27/16 31/24
**responding [2]**   19/22 31/20
**response [2]**   4/19 31/20
**responsive [6]**   6/9 14/8
20/12 24/23 32/5 48/4
**review [13]**   3/13 3/20 4/4
4/7 6/23 7/8 16/15 16/17
18/20 27/12 38/11 44/4
46/5
**reviewed [2]**   13/8 15/8
**reviewing [1]**   18/2
**revisit [1]**   34/7
**right [15]**   5/18 7/10 12/22
14/13 15/16 21/2 23/17
25/4 31/6 31/17 36/8 38/21
39/24 47/4 48/24
**rise [2]**   6/17 22/11
**rises [1]**   49/16
**road [3]**   5/10 31/1 47/6
**Room [1]**   1/22
**RPR [3]**   1/20 53/3 53/10

**S**

**said [12]**   9/13 20/19 23/17
24/25 29/15 36/22 36/24
36/25 46/12 48/1 48/25
51/6
**same [6]**   14/21 19/7 19/20
20/1 39/7 39/25
**sampling [1]**   9/17
**satisfied [2]**   33/15 33/21
**satisfy [1]**   45/14
**say [41]**   4/14 6/2 6/16 7/6
8/10 13/10 14/13 14/17
14/22 15/21 19/10 19/15
20/18 23/11 23/12 23/16
24/10 24/13 25/22 27/18
27/19 29/4 31/24 32/15
32/16 34/7 35/18 37/16
39/16 40/2 40/3 40/16
40/17 41/5 41/14 41/18
46/22 47/16 47/22 49/12
51/14
**saying [25]**   5/6 11/17
17/15 19/7 19/13 19/21
22/24 25/1 25/12 26/1
26/18 28/2 30/7 30/14
30/20 31/4 31/4 35/24
38/20 38/21 39/12 41/17
45/5 51/5 51/16
**says [7]**   14/18 26/2 29/3
31/16 38/2 39/9 44/20
**search [56]**
**searched [1]**   36/21
**searches [7]**   10/23 22/6
22/7 38/16 44/13 46/18
46/18
**searching [2]**   24/22 39/18

**S**

seat [1]  42/18
second [4]  6/15 7/25 10/13
28/25
secretary [36]  2/24 3/4
3/11 3/14 4/2 5/8 5/21 6/3
6/12 7/21 7/22 8/23 10/24
11/11 11/17 13/20 13/23
15/7 16/17 19/13 19/13
21/7 22/7 22/20 25/10
25/23 33/14 33/16 33/25
35/15 42/24 44/3 44/15
45/14 48/25 51/8
secretary's [1]  17/8
section [1]  43/3
security [8]  1/6 2/4 2/10
3/4 17/25 22/22 25/12
35/15
see [8]  10/17 24/12 24/19
28/25 31/19 38/25 44/6
49/9
seeing [1]  9/19
seek [2]  23/10 43/25
seeking [25]  6/7 11/8
11/20 11/21 12/3 13/5
14/14 22/11 22/18 23/2
23/4 23/10 23/11 23/20
23/21 23/24 24/4 24/9
24/10 24/11 24/14 24/18
25/1 30/7 42/15
seems [4]  5/13 6/11 32/14
46/6
seen [1]  49/24
segregate [1]  38/19
self [1]  19/15
send [1]  19/14
sender [1]  14/4
sending [3]  11/11 11/15
36/5
sends [3]  22/21 22/23
25/10
sense [6]  4/23 13/25 15/6
18/12 35/21 48/17
sensibly [1]  40/19
sent [4]  9/19 30/11 34/23
36/16
separate [4]  16/3 16/16
48/22 48/22
separating [1]  47/24
separation [1]  24/15
seriously [1]  11/19
serve [2]  14/11 14/18
server [3]  6/8 25/3 25/7
service [1]  48/5
set [5]  7/9 7/24 8/15
37/12 51/2
setting [1]  41/7
shame [1]  6/11
she [2]  39/5 39/5
shield [2]  39/14 41/1
shifting [1]  33/10
shocked [1]  31/19
shorthand [1]  1/24
should [7]  28/8 30/20 32/9
33/20 42/2 42/6 46/22
shoulders [1]  35/17
show [3]  39/16 40/1 40/2
shows [2]  4/6 13/23
sift [1]  41/3
significant [3]  33/25 34/4

34/6
similar [4]  5/13 8/22
18/17 50/14
simply [3]  24/13 25/8
25/25
since [1]  39/3
single [2]  10/23 20/10
sir [1]  2/16
sit [3]  25/14 32/10 51/12
sitting [1]  35/14
situation [2]  16/16 35/6
situations [2]  11/5 12/16
small [1]  48/14
so [70]
social [1]  18/10
softball [1]  38/2
some [39]  2/20 2/25 5/9
5/10 7/9 7/19 8/15 9/17
9/20 9/21 12/4 12/23 13/25
15/23 16/2 18/24 20/8
20/12 21/6 22/2 22/24
24/25 27/23 31/11 33/19
33/20 34/3 34/11 34/15
36/22 38/14 40/5 40/21
48/4 48/5 49/20 51/2 51/13
51/15
somebody [1]  33/3
somehow [1]  25/17
someone [7]  9/14 19/15
20/10 38/17 38/24 47/1
51/5
someone's [2]  25/7 39/16
something [15]  9/15 10/1
10/3 19/14 23/2 23/11 25/2
26/16 28/5 35/2 37/10
38/23 46/22 48/19 51/9
sometimes [1]  10/15
somewhat [4]  3/8 32/8 37/4
48/1
soon [2]  3/17 15/13
sorry [1]  12/8
sort [23]  4/20 6/11 11/3
13/11 13/15 15/3 16/15
16/15 20/25 25/25 27/18
28/6 30/13 31/11 32/21
33/13 43/6 46/11 46/14
46/15 46/15 46/20 49/8
sorts [2]  20/1 43/25
sought [8]  10/9 10/12
10/19 11/6 12/13 18/13
18/25 51/20
sound [1]  5/7
sounds [2]  5/5 11/13
spam [1]  48/11
speak [5]  9/1 11/3 42/23
43/18 47/25
speaking [1]  43/19
specific [1]  33/5
specifically [1]  32/21
spot [2]  14/21 30/19
spouse [2]  17/9 19/13
stand [4]  14/12 21/19 51/3
51/11
start [4]  2/18 14/11 14/19
39/17
starting [1]  29/14 31/5
43/6 48/10
stated [2]  47/12 48/19
STATES [7]  1/1 1/10 17/22
17/24 37/17 37/19 45/2
status [3]  8/4 42/7 50/18

statute [1]  29/11
statutorily [1]  30/1
stenographic [1]  1/24
step [1]  15/2
steps [1]  47/11
Steve [1]  3/5
still [6]  14/17 16/1 16/8
27/14 27/20 48/18
Street [1]  1/14
strike [1]  42/11
strikes [3]  35/23 37/24
38/23
subject [3]  7/3 12/2 36/18
submit [2]  20/22 51/15
subpoena [3]  40/4 40/11
40/16
substantial [2]  27/8 29/23
substantially [2]  2/22
17/18
successor [1]  44/25
such [1]  33/24
sufficient [4]  12/25 26/25
44/6 47/9
sufficiently [2]  11/6 11/8
suggest [3]  28/5 28/23
29/21
suggested [2]  27/10 42/3
suggesting [1]  28/22
Suite [1]  1/14
summary [3]  4/1 4/24 9/11
suppose [3]  8/1 9/18 11/16
supposed [2]  26/3 26/4
sure [21]  2/19 8/7 9/18
9/21 12/9 22/16 22/19
24/19 26/3 29/20 29/25
29/25 31/12 33/5 33/6
33/12 38/15 40/7 43/2
46/24 47/14
surely [1]  28/22
suspect [3]  25/17 31/23
49/3
SW [1]  1/14
swat [1]  40/2
systems [3]  9/5 14/3 44/13

**T**

table [1]  2/11
take [5]  12/22 15/22 22/20
25/9 36/4
taking [2]  2/14 33/22
talk [5]  25/13 32/4 32/10
33/11 51/13
talked [1]  22/1
talking [3]  15/4 37/18
37/19
tasked [1]  24/22
team [1]  40/3
technology [1]  46/9
telegraph [1]  47/5
telephone [1]  25/23
tell [7]  24/13 27/13 27/21
30/20 31/19 32/20 34/16
telling [1]  25/24
tends [1]  43/15
term [2]  12/16 44/21
terminology [1]  11/25
terms [21]  6/22 7/6 7/9
10/22 12/14 16/14 18/25
20/2 20/3 20/8 20/15 20/22
20/23 21/3 22/15 31/15
31/23 31/24 34/11 43/25

**T**

terms... [1]   47/23
terribly [1]   42/12
than [14]   4/5 6/6 7/5
16/20 16/24 18/6 20/18
24/10 25/24 26/10 35/24
36/8 45/24 50/20
thank [10]   2/16 2/19 21/14
21/15 41/24 42/20 42/21
52/4 52/6 52/7
that [452]
that's [48]   4/17 5/4 8/12
10/2 10/3 11/20 14/5 16/22
19/6 19/20 20/12 20/20
20/25 21/14 22/19 22/25
23/18 23/19 24/11 25/17
26/16 27/3 28/11 30/21 31/5
34/3 34/9 35/11 36/12 37/2
37/6 37/9 37/23 38/3 38/13
39/20 39/24 41/4 41/5
41/23 42/4 44/10 45/13
45/19 46/22 47/4 48/24
49/18
that's what's [1]   37/6
their [21]   8/24 9/1 9/19
10/2 16/13 22/1 24/21
24/24 31/14 31/18 35/4
35/8 36/12 38/25 39/10
40/6 41/7 44/6 44/9 44/10
48/2
theirs [1]   16/21
them [31]   5/20 6/1 6/10
6/14 6/15 8/15 8/16 9/7
9/23 12/20 12/21 15/14
17/5 19/15 27/17 27/21
28/1 30/25 32/3 32/24 35/8
39/14 39/24 41/2 41/4 41/9
41/10 41/13 41/15 41/18
45/3
themselves [2]   16/13 23/10
then [30]   6/13 6/16 7/7
7/20 7/23 13/12 14/18 15/6
15/14 17/10 19/15 19/17
22/12 24/7 28/7 29/3 31/6
34/4 34/6 34/17 34/19 36/6
40/14 42/7 42/9 42/11
46/15 46/15 46/17 48/13
then though [1]   40/14
theory [1]   17/11
there [30]   2/25 3/1 4/16
5/10 5/23 6/8 6/15 7/6
9/12 9/16 10/7 11/2 15/15
17/9 17/17 18/8 20/10 21/9
22/3 23/6 23/13 27/10 32/2
34/23 38/25 40/12 44/11
46/19 48/16 50/13
there now [1]   40/12
there's [11]   3/7 6/16 7/20
17/13 28/7 28/13 29/22
34/15 37/9 38/10 48/18
therefore [3]   30/15 32/20
44/11
these [27]   3/9 4/15 4/18
12/4 14/24 15/5 15/22
15/24 29/9 29/17 30/9
30/24 30/24 32/17 35/4
36/10 36/15 38/19 39/18
40/11 40/12 41/11 41/14
41/14 46/6 51/5 51/6
they [89]

they'd [1]   14/11
they'll [1]   27/19
they're [16]   9/15 9/20
11/8 11/21 16/11 23/9
28/12 28/22 38/24 40/8
41/22 42/15 43/16 48/22
50/5 51/13
they've [12]   8/23 22/1
24/1 24/25 27/22 30/4 31/9
35/12 40/12 41/5 47/7 49/4
thing [7]   3/25 13/15 17/4
19/7 32/5 35/23 39/25
things [5]   17/17 37/20
38/13 45/5 51/3
think [85]
thinking [2]   7/12 10/7
thinks [2]   9/15 11/19
Third [1]   1/14
this [110]
those [22]   3/18 4/18 6/1
11/5 12/6 12/12 12/15 15/8
17/8 17/9 19/18 21/24
27/22 30/12 31/22 31/24
32/21 34/20 35/10 35/17
38/9 44/13
though [9]   2/17 5/5 5/13
11/19 30/6 38/14 40/14
47/22 51/9
thousands [1]   17/4
three [1]   39/8
threshold [1]   47/11
through [19]   6/13 6/14
6/15 6/20 7/12 10/21 16/24
17/3 27/2 33/9 34/19 37/5
38/16 40/10 40/18 46/7
46/15 46/16 46/20
thrown [1]   14/17
Thursday [1]   2/24
time [19]   3/14 4/23 6/15
8/24 9/3 9/10 11/18 14/20
15/17 19/22 20/17 22/24
25/4 42/2 44/2 46/2 46/2
50/16 51/25
timeframe [1]   24/1
timing [1]   41/25
today [7]   8/10 11/18 12/19
14/23 33/23 41/17 44/1
together [2]   16/8 34/17
too [3]   21/23 33/8 37/2
took [2]   6/23 44/16
transaction [1]   44/23
transcript [3]   1/9 1/25
53/4
transcription [1]   1/25
transom [1]   9/1
trash [1]   46/13
tricky [1]   38/14
tried [1]   34/25
tries [1]   36/13
trouble [2]   24/24 26/3
true [4]   9/14 22/19 48/24
49/1
try [4]   13/12 19/5 31/10
44/5
trying [5]   19/18 21/3
26/19 32/7 32/12
turn [3]   10/4 10/6 15/8
turned [3]   7/2 33/16 48/11
twice [2]   6/13 49/9
two [3]   10/7 19/8 44/7
type [2]   8/22 44/1

types [3]   18/11 19/18
36/18
typically [1]   20/25

**U**

U.s [5]   1/6 1/16 1/21 2/3
30/11
U.s.C [1]   43/3
ultimately [3]   13/13 17/25
48/18
unable [1]   20/4
uncertain [1]   31/25
uncertainties [1]   29/9
uncertainty [1]   34/12
unclear [4]   12/17 24/18
28/12 28/23
under [12]   3/21 3/22 7/13
10/9 23/5 29/10 32/21
35/17 40/8 40/9 44/22
47/10
understand [24]   4/11 6/23
9/6 12/9 13/4 18/25 19/7
20/7 21/22 21/25 24/1 24/9
26/2 27/17 28/14 30/4
33/18 35/14 35/17 37/7
38/24 40/20 41/11 41/22
understanding [7]   5/1 6/21
22/15 24/23 35/7 41/12
43/4
understands [1]   32/17
understood [2]   22/18 30/16
undertake [2]   18/19 44/13
undertaken [2]   14/3 44/4
undertaking [1]   4/25
undertook [5]   4/7 6/22 7/7
8/23 16/17
unduly [1]   36/24
unfair [1]   32/16
UNITED [7]   1/1 1/10 17/22
17/23 37/17 37/19 45/2
universe [18]   5/19 7/7
17/16 26/25 27/9 33/22
34/3 34/19 34/22 35/3
36/14 36/17 36/19 36/20
37/8 41/21 46/17 48/13
unless [2]   29/5 29/8
unreasonable [2]   30/21
30/22
until [2]   33/23 52/1
unusual [2]   37/4 37/4
up [16]   3/1 4/14 7/2 14/13
14/20 20/7 20/15 27/3
30/23 34/11 37/12 39/1
39/16 40/1 40/2 41/7
update [2]   2/20 10/5
updates [1]   17/7
upon [1]   48/23
us [15]   15/1 15/24 21/22
25/17 30/20 31/10 32/23
32/24 34/2 34/21 34/25
40/3 42/4 42/8 46/13
use [8]   11/25 12/16 12/19
19/14 23/9 31/21 35/4
36/11
used [2]   13/23 36/15
using [9]   6/22 10/22 10/24
11/23 19/2 25/10 35/25
43/6 46/9

**V**

vague [2]   31/22 31/24

# V

**vaguer [2]**  18/5 18/12
**value [1]**  45/3
**various [2]**  40/22 47/20
**vast [3]**  43/9 48/3 49/3
**venture [1]**  12/18
**versus [3]**  2/3 3/17 34/1
**very [9]**  12/21 15/13 18/17
 18/17 35/23 39/9 41/24
 51/6 51/9
**view [4]**  44/6 44/8 44/16
 47/17
**views [1]**  42/1
**virtually [1]**  44/17

# W

**waiver [2]**  35/4 35/7
**walked [1]**  30/25
**walking [1]**  32/19
**want [17]**  3/19 4/14 5/9
 23/16 26/2 26/3 27/17
 28/21 32/12 32/13 32/19
 32/23 32/24 35/18 35/20
 35/21 51/14
**wanted [6]**  2/20 3/23 3/25
 4/5 21/10 42/21
**was [44]**  4/4 5/11 5/25 6/4
 7/1 8/24 8/25 10/24 11/23
 15/10 16/24 18/11 21/9
 21/23 23/14 26/6 27/10
 29/19 31/3 31/3 31/4 33/8
 33/19 33/24 34/2 34/2 34/3
 34/5 34/24 35/8 35/10
 36/14 36/25 37/2 44/18
 45/5 45/23 46/1 46/3 46/5
 48/11 48/12 49/14 51/8
**Washington [5]**  1/5 1/14
 1/18 1/23 17/6
**wasn't [4]**  31/4 33/23 34/5
 35/9
**waste [1]**  14/20
**WATCH [10]**  1/3 1/13 2/3
 2/7 3/21 4/14 6/1 6/6 8/14
 44/6
**Watch's [2]**  6/9 43/23
**way [20]**  4/16 8/25 9/12
 9/16 9/20 10/6 16/24 20/12
 27/9 32/10 32/14 32/14
 34/3 37/11 40/21 41/7 41/9
 46/19 47/24 50/23
**way to [1]**  4/16
**ways [2]**  17/9 48/16
**we [72]**
**we'd [3]**  32/4 33/6 33/11
**we'll [4]**  14/20 15/14
 15/22 36/19
**we're [27]**  14/14 16/1
 21/20 22/18 23/4 23/4
 23/21 23/24 24/11 24/18
 25/19 26/21 26/23 30/7
 32/1 32/15 33/13 33/21
 34/6 34/13 38/1 38/11
 38/20 38/21 41/18 42/5
 47/10
**we've [4]**  12/1 30/25 36/20
 44/2
**website [1]**  31/3
**week [2]**  2/23 2/24
**weeks [2]**  3/18 6/24
**welcome [1]**  2/15

**well [37]**  2/15 5/1 5/22
 7/11 7/14 8/18 11/2 13/17
 16/9 17/11 19/10 19/15
 20/18 21/20 22/14 22/19
 23/6 23/21 24/7 24/21
 25/16 26/7 27/5 28/3 28/6
 30/6 35/7 35/11 37/1 37/13
 37/23 39/23 41/6 41/9
 45/10 49/1 49/6
**went [2]**  6/14 46/4
**were [18]**  8/13 14/12 17/6
 18/5 18/8 19/2 20/23 25/1
 30/8 36/16 39/3 39/21
 39/21 39/22 39/25 47/8
 49/2 49/7
**weren't [1]**  23/11
**what [107]**
**what's [9]**  18/25 22/2
 34/25 37/6 38/25 46/25
 47/21 50/16 51/20
**whatever [2]**  16/24 48/5
**whatsoever [1]**  35/5
**wheat [1]**  47/24
**when [13]**  11/5 17/2 23/9
 23/17 31/23 33/10 33/13
 37/16 38/10 38/24 43/8
 43/11 43/15
**where [17]**  8/20 11/10
 12/13 13/22 14/3 19/2 19/9
 20/10 21/18 26/17 29/22
 34/7 34/12 35/2 39/8 41/3
 47/19
**whether [18]**  4/16 5/11 7/2
 7/20 9/20 10/1 10/8 10/10
 10/24 18/2 19/11 29/10
 32/4 34/20 42/14 47/12
 49/21 50/3
**which [32]**  2/21 3/7 4/1
 5/7 6/23 7/9 7/22 8/17 9/3
 10/14 11/13 12/1 12/1
 12/11 14/9 17/25 18/21
 19/6 19/8 19/22 22/9 23/19
 27/9 27/24 29/3 31/20 36/4
 36/6 38/18 42/13 43/1
 46/11
**who [3]**  11/7 27/6 28/4
**who's [4]**  22/21 22/23
 25/11 30/13
**whole [1]**  20/20
**why [13]**  2/18 16/25 20/7
 20/21 20/22 24/19 34/10
 34/10 35/17 36/12 39/21
 39/22 51/16
**will [16]**  2/4 2/21 3/23
 6/9 15/13 15/13 15/13
 15/14 15/16 15/23 24/5
 26/20 45/13 45/14 50/23
 51/6
**willing [1]**  37/14
**wise [1]**  49/8
**withholding [2]**  29/13
 39/11
**within [6]**  3/18 9/3 13/19
 16/9 49/5 50/18
**without [5]**  15/1 20/19
 25/16 46/20 49/20
**won't [1]**  50/11
**wonderful [1]**  11/18
**wondering [1]**  7/1
**word [2]**  12/19 27/23
**words [5]**  19/19 23/8 31/21

 32/17 32/22
**work [12]**  6/19 10/20 11/18
 15/18 19/5 20/20 20/21
 34/19 42/10 44/5 49/9
 50/19
**workable [1]**  42/4
**world [2]**  32/17 35/16
**worth [1]**  12/24
**would [72]**
**wouldn't [6]**  44/8 44/11
 44/12 47/19 47/20 48/19
**writing [3]**  22/21 22/23
 25/11
**wrong [1]**  40/15

# X

**X's [1]**  19/13

# Y

**yeah [3]**  23/14 35/18 35/21
**year [1]**  36/8
**years [2]**  22/22 25/12
**yes [3]**  6/21 37/22 46/1
**yet [4]**  4/20 32/3 38/12
 47/15
**you [138]**
**you'd [1]**  19/3
**yourselves [2]**  2/5 32/11